In the Matter of CITIZENS LOAN AND SAVINGS COMPANY, Bankrupt.

George V. AYLWARD, Jr., Trustee in Bankruptcy, Plaintiff,

v.

Hamilton T. MURPHY and Paula Murphy, Defendants.

Bankruptcy No. 77–60215–B–SJ.

United States Bankruptcy Court,
W. D. Missouri,
St. Joseph Division.

Dec. 12, 1979.

Daniel J. Flanigan, Kansas City, Mo., for plaintiff.

Robert R. Raymond, James W. McManus, and Jennifer A. Gille, Kansas City, Mo., for defendants.

## ORDER FINDING SUMMARY JURISDICTION IN BANKRUPTCY COURT AND DIRECTING DEFENDANTS TO TURN OVER THE SUM OF $17,690 TO THE TRUSTEE HEREIN IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff trustee in bankruptcy has filed his complaint herein for turnover by defendants to him of the sum of $17,690. The defendants object to the summary jurisdiction of the court of bankruptcy and have submitted[1] the following material facts in support of their objection: Prior to the date of bankruptcy of Citizens Loan and Savings Company, the defendants loaned some $45,000 to Richard H. Snooks, their nephew and then president of Citizens Loan and Savings Company. In return, Mr. Snooks purported to give the defendants a security interest in some 36,000 shares of Agrilessors, Inc., which he purported to own in his own right, having a value of $36,000. This transaction whereby the security agreement was exchanged for the $45,000 loan took place in July of 1977, only shortly in advance of August 11, 1977, the date of bankruptcy of Citizens Loan and Savings Company.[2]

After the date of bankruptcy, the court, on January 20, 1978, issued its order directing Richard H. Snooks to turn over to the trustee herein in bankruptcy[3] the monies of the bankrupt which he had taken from it without any explanation. This sum was in excess of $250,000.[4] The court of bankruptcy then denied Mr. Snooks' application for a stay of the effect of the turnover order for the period of the pendency of the appeal which he took therefrom.[5]

Nevertheless, the appeal then pended for a complete year.[6] It was not until late January 1979 that, after the appeal had "laid dormant" by agreement of the parties thereto and no effort was made to enforce the appealed-from order,[7] the appeal was terminated by an agreement between the parties whereby, as here pertinent, Richard H. Snooks was to turn over[8] to the trustee

1. A trial of the issues raised by the request for summary relief was held on November 6, 1979, at which the testimony of Richard H. Snooks was taken and certain documentary evidence was adduced and admitted by agreement of the parties. Also, the transcript of the oral depositions of Hamilton T. Murphy and Paula L. Murphy, taken October 4, 1979, were admitted in evidence in accordance with the agreement of the parties.

2. Citizens filed its petition under Chapter XI of the Bankruptcy Act on August 11, 1977. Later, on September 16, 1977, on its motion, it was adjudicated a bankrupt. Under such circumstances, the date of bankruptcy is the date of the filing of the chapter petition. See Rule 122(1) of the Rules of Bankruptcy Procedure.

3. Robert L. Jackson was then the predecessor trustee in bankruptcy; upon his death in February 1979, he was succeeded by George V. Aylward, Jr., the current trustee herein in bankruptcy.

4. The precise sum which Richard H. Snooks was directed to turn over to the bankruptcy estate by the order of January 20, 1978, was $250,366.27.

5. The order denying stay during the pendency of appeal was entered herein on February 7, 1978.

6. The stipulated consent judgment resolving the appeal was entered by the district court on January 28, 1979.

7. Throughout the year of 1978, no action was taken on the appeal. It does not even appear from the files and records herein that briefs were even required of the parties. A letter of counsel for the defendant Richard H. Snooks in respect of the appeal states under the date of November 16, 1978, that all counsel involved agreed "that the appeals might lie dormant with no action being taken until one of us advises the Court that there is a desire to proceed to adjudication."

8. In a former adversary action, in support of his contention that he was not duty bound to satisfy the turnover order, Richard H. Snooks contended that the order of the district court of January 28, 1979, is not a turnover order, but rather "an ordinary, plenary judgment for a debt in the amount of $184,491.69." As this court noted, however, in its order of May 25, 1979, "(t)he principal problem with this argu-

in bankruptcy approximately $180,000.[9]

In the meantime, on or about December 31, 1978, Richard H. Snooks returned the 36,000 shares to Agrilessors, Inc., whereupon he received the sum of $36,000 therefor. None of that amount was turned over to the trustee herein in bankruptcy in accordance with the turnover order of the district court, sitting as a court of bankruptcy,[10] entered in the month of January of 1979. Rather, after representing to the court that he was without any substantial funds,[11] Richard H. Snooks, in April of 1979, paid some $17,690.00 to the defendants, who then knew of the bankruptcy of Citizens Loan and Savings and of the involvement of Richard H. Snooks in it.[12]

### Conclusions of Law

■ The threshold question raised by the defendants is whether the court of bankruptcy has summary jurisdiction to rule upon the turnover issue. The parties have cited extensive congeries of authority on this issue, but, for the reasons set out in the marginal note, the great majority of them are wholly inapplicable to the action at bar.[13] The rule which is applicable to the action now under consideration is the one which holds that a person who receives property of the bankrupt after the date of the filing of a petition in bankruptcy is subject to the summary jurisdiction of the bankruptcy court to issue an order sounding in turnover. "(A)ny person acquiring an interest in property of the bankrupt . ., adverse to the creditors, after the filing of a petition with notice of it, may be directed to surrender the property thus acquired by summary order of the bankruptcy court." *May v. Henderson*, 268 U.S. 111, 117, 45 S.Ct. 456, 459, 69 L.Ed. 870 (1925). "There can be no serious question about summary jurisdiction (in respect to) . . . a . . transfer of funds belonging to the bankrupt estate after bankruptcy." *South Falls Corporation v. Rochelle*, 329 F.2d 611, 616 (5th Cir. 1964). And see also *In re Naviera Azta, S. A.*, 500 F.2d 390, 391 (5th Cir. 1974), to the effect that, "(g)enerally speaking, the bankruptcy court, either in the person of the referee or the district judge, may adjudicate summarily all rights and claims pertaining to property in the actual or constructive possession of the court."

■ Applying these well-established legal principles to the facts of this case, the court cannot escape the conclusion that the monies *sub judice* were in the constructive possession of the bankruptcy court, and therefore property of the estate within the meaning of the foregoing authorities, at the time of their transfer to the defendants. Constructive possession is defined to include property in the actual possession of a person who can hold it only as property of the estate in bankruptcy. "Constructive possession occurs where the property . . . is held by some other person who makes no

---

ment is that there is no independent federal jurisdiction, outside of the bankruptcy jurisdiction of the federal courts, on which such a judgment can be based."

**9.** The precise amount is $184,491.69. See note 8, *supra*.

**10.** See note 8, *supra*.

**11.** As soon as the district court entered its turnover order of January 28, 1979, as is noted in the text of this memorandum, Richard H. Snooks came under a duty to turn monies over to the trustee, according to his ability to pay. Therefore, on March 6, 1979, the court conducted an examination of him under section 7a(10) of the Bankruptcy Act, in part to determine the ability to pay. An inquiry into the whereabouts of the $36,000 obtained from the Agrilessors stock met with Mr. Snooks' assertions that "(i)t has been distributed," some "17, 18,-

000" of it to the defendants. See pages 11–12 of the transcript of the 7a(10) examination of Richard H. Snooks. In a later examination, conducted in November of 1979, Mr. Snooks then revealed that he had transferred the monies to the defendants in April of 1979.

**12.** See the transcript of the oral depositions of Hamilton T. Murphy and Paula L. Murphy of October 4, 1979, pp. 5–6.

**13.** Those cases dealing with summary jurisdiction in particular, *Suhl v. Bumb*, 348 F.2d 869 (9th Cir. 1965); *In re M. H. Bekkedal & Sons*, 81 F.2d 337 (7th Cir. 1936); and *Evarts v. Eloy Gin Corp.*, 204 F.2d 712 (9th Cir. 1953), did not involve postbankruptcy transfers of property of the bankrupt and within the constructive possession of the bankruptcy court.

claim to it, or . . . is held by one who makes a claim which is not substantial and is colorable only." 2 Collier on Bankruptcy para. 23.05(3), pp. 480–83 (1978). For, under *May v. Henderson, supra,* and its progeny, in the wake of the turnover order, Richard H. Snooks was under a duty to turn over to the estate all substantial monies coming into his hands. Generally, it is said that "the possession of corporate property by the officers and agents of a bankrupt corporation will be deemed the possession of the bankrupt, and they are not adverse claimants." *Kyle v. Stewart,* 360 F.2d 753, 758, 759 (5th Cir. 1966). This aphorism applies even more particularly and strongly in respect to monies held subject to a turnover order. For, although the corporate officer may have previously disposed of the specific monies for which the turnover order was issued, he remains nevertheless under a duty to pay such monies as come into his possession, under his claim of right,[14] toward satisfaction of the turnover order. "The duty of a fiduciary to account for property intrusted to his care is fulfilled by delivery of the property; but if he has put it out of his power to deliver it, he may nevertheless be compelled to account for its worth . . . (and) to make restitution of the value of the property which (he has) dissipated without a colorable claim of right." *May v. Henderson, supra,* 268 U.S. at 119, 45 S.Ct. at 460. "Any other rule would leave the bankruptcy court powerless to deal in an effective way with those holding property for the bankrupt, who, pending the bankruptcy proceedings, wilfully dispose of it by placing it beyond the reach of the court." *Id.* See also *South Falls Corp. v. Rochelle,* 329 F.2d 611, 618 (5th Cir. 1964), to the effect that "(t)urnover relief is proper . . . where 'existing chattels or their proceeds' are available . . . Here the 'proceeds' of the cash are the remaining assets saved by the misappropriation of bankrupt funds." This duty to respond to the turnover order is so absolute that it may be enforced by civil and criminal contempt,[15] and the fiduciary may escape the contempt adjudication only by demonstrating that he is "insolvent" and has "turned over his property generally to the bankruptcy court." *May v. Henderson, supra,* 268 U.S. at 120, 45 S.Ct. at 460. In respect to the fiduciary of a corporation "who knowingly misapplied, if not misappropriated, bankrupt funds," it is held that his liability "will permeate every asset to the point where this would exhaust the value of all assets as of the date of the turnover order." *South Falls Corporation v. Rochelle, supra,* at 619.

Under these plain principles, the character of the $36,000 from which the $17,690 *sub judice* was paid to the defendants as property of the estate in bankruptcy is conclusively demonstrated. In their briefing of this action, the defendants contend otherwise, arguing that their security interest in the Agrilessor stock set these proceeds apart from estate property. But there was no perfected security interest in the "proceeds" of the Agrilessor stock, for

---

**14.** Even those monies which Richard H. Snooks could claim in his own right were subject to the turnover order and hence in the constructive possession of the bankruptcy court. See pages 513 and 514 of the text of this memorandum, *infra.* "Had not the Bankrupt's dollar been transferred, (the fiduciary) would have parted with one of (his) own . . . In effect, (he) now has a dollar, either in cash or property, which (he) would not have had but for the transfer of bankrupt funds." *South Falls Corporation v. Rochelle,* 329 F.2d 611, 619 (5th Cir. 1964).

**15.** "Failure to comply with a turnover order constitutes a civil contempt of court for which the person disobeying may be subject to fine or imprisonment. The turnover order itself conclusively establishes the jurisdiction of the court, whether judge or referee, and the defendant's then ability to comply with the order . . . In the contempt proceeding the only issue before the court is the alleged contemnor's present ability to comply. If present ability is shown by clear and convincing evidence, coercive punishment for failure to obey will follow; but if the court is satisfied that a *present inability is demonstrated,* coercion by punishment will be considered futile and will not be attempted. In the latter case, punishment for a criminal contempt, or other criminal charge, may follow." 2 Collier on Bankruptcy para. 23.10, pp. 586.1, 586.2, 586.3, 586.4 (1976).

no financing statements were filed reserving a security interest in proceeds as required by the governing provisions of the Uniform Commercial Code.[16] Thus, Richard H. Snooks held the proceeds as his own as of December 31, 1978, and thereafter. And, as his own property, saved, as it were, by his prior expenditure and disposition of the monies for which the turnover order was issued, it was also, according to the authorities cited above, the property of the estate in bankruptcy.

In this case, as in *South Falls Corporation v. Rochelle, supra,* and *Lesser v. Jewel Factors Corp.,* 470 F.2d 108, 110 (2d Cir. 1972), the intended effect of the transfer was to escape the duty of turning the property over to the bankruptcy estate and thereby to grant the defendants payments, in effect, from the estate. "Under these circumstances, the creditor must repay this money to the trustee." 470 F.2d at 110.

■ Nor is it necessary, as the defendants appear to argue, that the defendants have definite and specific knowledge that the monies transferred are those of the estate, as opposed to the corporate officer, for this rule to apply. Rather, it is sufficient that the defendants, as the evidence shows, had knowledge of the petition in the bankruptcy case and of Richard H. Snooks' position with the bankrupt. For the filing of a bankruptcy petition is not only "an attachment and an injunction," but also "a caveat to all the world," under which a person does business at his peril with the bankrupt or its officer. *May v. Henderson, supra,* 268 U.S. at 117, 45 S.Ct. at 459. If the rule were otherwise, it would be difficult to imagine a situation in which the court could enforce its turnover orders effectively in the face of a corporate officer's determination to apply the corporate assets elsewhere.[17]

Contrary to the apparent contentions of the parties hereto, section 70d of the Bankruptcy Act is inapposite to this action.[18]

It is therefore found that summary jurisdiction exists in the court of bankruptcy and accordingly it is hereby

ORDERED AND ADJUDGED that the defendants turn over the sum of $17,690 to the plaintiff forthwith and with reasonable dispatch.

---

**16.** Pertinently, the security agreement between Richard H. Snooks and the defendants provides that "(t)he laws of Missouri shall govern the construction of and the interests, rights and duties of the parties to this security agreement." Under the Missouri version of the Uniform Commercial Code, a security interest in proceeds "is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless (a) a filed financing statement covering the original collateral also covers proceeds; or (b) the security interest in the proceeds is perfected before the expiration of the ten-day period." Section 400.9–306(3) RSMo. Assuming original perfection of the security interest in the stock, a fact which does not appear plainly to be established by the evidence adduced to this court, there is no evidence of perfection by filing or possession within 10 days of the proceeds. Further, even if there were a perfected security interest, it would not avail the defendants when the making of it shortly prior to bankruptcy and the exercise of the rights under it, despite an intervening and applicable turnover order, took place after bankruptcy. Cf. *Lesser v. Jewel Factors Corp.,* 470 F.2d 108 (2d Cir. 1972); *South Falls Corporation v. Rochelle,* 329 F.2d 611 (5th Cir. 1964).

**17.** Recipients of monies paid them after bankruptcy by an officer of the bankrupt cannot be entitled to "close their eyes" without investigation of the possibility that the money may belong to the bankrupt. And if a bankruptcy court cannot enforce its orders to attach to monies then in the corporate officer's possession, or in the possession of relatives to whom he has transferred it, then there is very little it can do to accomplish the purposes and objectives of the Bankruptcy Act.

**18.** That section applies to dealing in good faith with a bankrupt, "either before adjudication or before a receiver takes possession of the property of the bankrupt." Both of the latter events had taken place in this case at the time of the transfer of the subject monies to the defendants.