In the Matter of CITIZENS LOAN AND SAVINGS COMPANY, Bankrupt.

George V. AYLWARD, Jr., Plaintiff,

v.

William GARVEY, Defendant.

Bankruptcy No. 77–60215–B–SJ.

United States Bankruptcy Court,
W. D. Missouri,
St. Joseph Division.

Aug. 31, 1981.

See also, Bkrtcy., 3 B.R. 377, Bkrtcy., 5 B.R. 510, 8th Cir., 634 F.2d 1144.

Daniel J. Flanigan, Kansas City, Mo., for plaintiff.

James H. Counts, St. Joseph, Mo., for defendants.

## FINAL JUDGMENT OF DISMISSAL

### I

STEWART, Bankruptcy Judge.

This court formerly transferred this adversary action for turnover to the civil docket of the district court under Rule 915(b) of the Rules of Bankruptcy Procedure. This was done after this court had entered its order expressly finding itself to be without summary jurisdiction of the trustee's complaint. The trustee timely appealed from this court's finding that it was without summary jurisdiction.

The district court, however, dismissed the timely appeal as moot by means of its order of July 14, 1981, and remanded the action to this court with a finding that this court had erred in finding itself to be without summary jurisdiction.

### II

The principles which this court must now apply are both fundamental and clear. Having previously found itself to be without jurisdiction, this court may now entertain this action only in the event of reversal on *direct appeal* and not by way of collateral attack.[1] It is eminently plain

---

1. "Supreme Court decisions have now made it clear that the bankruptcy court has power in the first instance to determine whether it has jurisdiction to proceed. Moreover, any determination concerning its own jurisdiction, even though erroneous, is *res judicata* in a subsequent collateral proceeding. These principles apply even if the question of jurisdiction was not raised; and they apply to the orders of the referee as well as to those of the judge." 1 Collier on Bankruptcy para. 2.05, pp. 150–151 (1978). "(W)here the question of the jurisdiction of the bankruptcy court ... was determined (by the referee in bankruptcy) ..., such determination by the referee is *res judicata* in a subsequent contempt proceeding for violation of the injunction, where no review of the refer- ee's order was sought or obtained and the time to review such order had subsequently expired." *Id.*, p. 151, n. 4. "It is now firmly settled that upon general reference the referee acts as a court of bankruptcy, except as to those matters which the Act or the Bankruptcy Rules reserve to the judge alone." 2A Collier on Bankruptcy para. 28.02, n. 18, pp. 1397–1398 (1978). And see *In re Hawks*, 471 F.2d 305, 307 (4th Cir. 1973) ("When the appellant failed to object to the Referee's Order ... and when it failed within the ten days allowed by statute to petition for review of that order of the Referee sustaining the jurisdiction to entertain the wife's petition ..., that order became final and no longer subject to appeal or collateral attack."); *Arizona Power Corp. v. Smith*,

that the district court did not make its finding that this court has summary jurisdiction on the direct appeal. Therefore, its finding in a collateral proceeding[2] cannot now be regarded as binding on this court. Rather, this court remains bound by its prior finding, the time for appeal from which has not elapsed. It therefore stands as the law governing this case. To follow any other principle would be to accede to the notion that bankruptcy court judgments may, untimely and in the absence of any appeal, be reconsidered at any time by the District Court. Such a rule would obviously have a disastrous effect upon bankruptcy court judgments. Therefore, the only course open to this court is to dismiss the trustee's complaint for lack of jurisdiction.

## III

Even if this court could reconsider its prior jurisdictional ruling (and, according to the prior principles, it cannot do so), it must nevertheless still find itself to be without summary jurisdiction in the light of the court of appeals' holding in *In re Citizens Loan and Savings Company*, 634 F.2d 1144 (8th Cir. 1980), to the effect that summary jurisdiction may be exercised only when it is clearly and unequivocally present.[3] See also *Gill v. Phillips*, 337 F.2d 258, 263 (5th Cir. 1964). The district court, in its order of July 14, 1981, indicates that a request for dismissal for failure to state a claim does not raise the issue of jurisdiction.[4] But it has been the rule in the federal courts at least since 1946 that the question of "[w]hether the complaint states a cause of action ... must be decided *after* and *not before* the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). (Emphasis added) It would therefore appear that the motion to dismiss for failure to state a claim[5] necessarily comprehends a motion to dismiss for lack of jurisdiction. And the hearing which was conducted by this court is viewable as the inquiry required into that issue.[6]

## IV

Nevertheless, in the hope that this action may yet be expeditiously determined on its merits and in the interest of justice, in rendering its dismissal in this action, this

119 F.2d 888, 890 (9th Cir. 1941); 2A Collier on Bankruptcy para. 39.29, pp. 1540.5, 1540.6 (1978) ("If an appeal of the referee's order is not taken, that order has the force and effect of an order of the district court and is *res judicata* as to the merits. The parties' right to complain of the order is effectively lost, except for possible reconsideration by the referee himself, and the order is *not subject to collateral attack in the district court.*" (Emphasis added.)).

2. Under the rules which apply to attacks on judgments on jurisdictional questions rendered by the bankruptcy court, almost any proceeding, other than a direct appeal, is a "collateral" proceeding in which the jurisdictional judgment of the bankruptcy court may not be challenged. A "collateral or indirect attack" is "an attempt to avoid, defeat or evade (a judicial proceeding), or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." See Black's Law Dictionary 327 (1968).

3. Thus, in that case, even though it appeared that the summary jurisdiction of the bankruptcy court could be sustained with respect to at least a portion of the sums paid to the defendant, with respect to which he could not conceivably have made a claim of right. But, because he could claim some of the monies paid

him, the court of appeals held that he must be regarded as having a substantial claim of right to *all* the monies paid him.

4. None of the cases cited for that proposition directly so hold, however.

5. As is otherwise stated in the dissent in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the alternative meaning of a motion to dismiss for failure to state a claim is that it is a motion to dismiss for failure to state a claim *within the jurisdiction of the court.* See 327 U.S. at 685, 66 S.Ct. at 777.

6. The bankruptcy court is required, when there is a cognizable objection to summary jurisdiction, to conduct a hearing on the issue of jurisdiction which, in most imaginable instances, is of about the same nature and scope as a hearing on the merits. "In all cases where the summary power of the bankruptcy court is disputed, a preliminary inquiry is necessary to ascertain whether or not the requisites for summary jurisdiction ... are present, and so to determine whether or not the court may proceed further." 2 Collier on Bankruptcy para. 23.07, p. 520 (1976).

court will, and hereby does, incorporate the findings in the attached order in this judgment so that, if the trustee appeals this judgment, the district court may, if it reverses it, possibly rule on the merits of the action by way of considering these findings, hopefully without the necessity of another remand.

All that is done here is done with the good faith hope of achieving a just ruling on the merits of the action at bar. This court, therefore, does not exercise its discretion, as it might, to remit this case to the concurrent jurisdiction of other state or federal courts, a measure which would likely save it the ignominy of another reversal on appeal.[7]

If, however, the trustee does not appeal from this judgment in an effort to serve a determination of the merits by the district court, he should file the action in the district court[8] or an appropriate state court.

It is therefore

ADJUDGED that the plaintiff's complaint be, and it is hereby, dismissed without prejudice.

ORDER DIRECTING THE TURNOVER TO THE TRUSTEE HEREIN IN BANKRUPTCY OF THE SUM OF $9,727.42 AND OTHERWISE DENYING THE COMPLAINT OF THE TRUSTEE

STEWART, Bankruptcy Judge.

The trustee herein in bankruptcy has filed his complaint herein seeking the turnover to him of some $13,727.42 which he claims to be the property of the trustee in bankruptcy in the hands of the defendant.

The defendant's answer contained a possible objection to summary jurisdiction, but the case may have been presented on its merits to the court of bankruptcy. Therefore, a hearing was conducted on the issues joined by the pleadings. The competent credible evidence then adduced clearly demonstrated the following simple set of facts: The defendant is the brother of Janice L. Snooks, the wife of Richard H. Snooks, the former president of the bankrupt Citizens Loan and Savings Company. He is also the officer of the Phoenix Corporation who exercised, throughout the time periods in question, complete control of the acts and affairs of that corporation,[1] particularly those transactions and occurrences which are material in the action at bar. On September 5, 1978, well subsequent to the date of bankruptcy of Citizens Loan and Savings Company (August 11, 1977), the Phoenix Corporation took title to the residential property at 2218 Lafayette in St. Joseph, Missouri.[2] This was done under an arrangement with Richard H. and Janice L. Snooks whereby the mortgage payments due to the mortgageholder, Belt American Bank of St. Joseph, Missouri, were to be made by the Snookses and the residence was to be dwelt in by them. The $4,000 which was paid by Phoenix as the down payment against the residential property was made the subject of a promissory note from the Snookses to the defendant. Thereafter, on three subsequent dates, the Snookses made payments to the defendant or to Phoenix on account of this transaction. More materially, these payments were made subsequent to the issuance of a turnover order by the district court, sitting as the court of bankruptcy, against Richard H. Snooks on January 20, 1978, in the sum

---

7. "(T)here is a limited discretion available to a bankruptcy court to require matters to be litigated in state courts even where the jurisdiction exists in the bankruptcy court." *In re Axton,* 641 F.2d 1262, 1273 (9th Cir. 1981), and cases there cited.

8. Which, for the reasons stated in the initial order of transfer of this court, would appear to have independent federal jurisdiction.

1. The degree to which Mr. Garvey controlled the affairs of the Phoenix Corporation is evidenced by the transactions here being adjudicated whereby the corporation was to be used as the straw party holding title to the residence which was to be used by his relatives in a manner in which the relatives would enjoy beneficial but silent title to the property and pay rent which equaled, but did not exceed, the mortgage payments.

2. See note 1, *supra.*

of $250,366.27. The order was affirmed by the district court on January 28, 1979, to the extent of $184,491.61. Therefore, the monies which were paid by Richard H. Snooks constituted monies which should have been applied against the liability evidenced by the turnover order. This principle is well established under the cases, authorities, and reasoning contained in the judgment of this court issued in *Aylward v. Murphy*, 5 B.R. 510 (Bkrtcy.W.D.Mo.1979), affirmed, Civil Action No. 80–06017–CV–SJ (W.D.Mo.1981). There, the governing rule was pertinently stated as follows:

"The rule which is applicable to the action now under consideration is the one which holds that a person who receives property of the bankrupt after the date of the filing of a petition in bankruptcy is subject to the summary jurisdiction of the bankruptcy court to issue an order sounding in turnover. '[A]ny person acquiring an interest in property of the bankrupt ..., adverse to the creditors, after the filing of a petition, with notice of it, may be directed to surrender the property thus acquired by summary order of the bankruptcy court.' *May v. Henderson*, 268 U.S. 111, 117 [45 S.Ct. 456, 459, 69 L.Ed. 870] (1925). 'There can be

no serious question about summary jurisdiction [in respect to] ... a ... transfer of funds belonging to the bankrupt estate after bankruptcy.' *South Falls Corporation v. Rochelle*, 329 F.2d 611, 616 (5th Cir. 1964). And see also *In re Naviera Azta, S.A.*, 500 F.2d 390, 391 (5th Cir. 1974), to the effect that, '[g]enerally speaking, the bankruptcy court, either in the person of the referee or the district judge, may adjudicate summarily all rights and claims pertaining to property in the actual or constructive possession of the court.'"

Nevertheless, Richard H. Snooks, after receiving certain monies which should have been paid to the trustee in bankruptcy,[3] paid sums of $3,660.48 and $6,067.24 on the respective dates of January 18, 1979, and February 28, 1979, for carpeting for the new residence and for down payment on that residence,[4] respectively. Thus, they were for improvements to the residence, title to which had been taken in the name of the Phoenix Corporation. According to the defendant's testimony, a benefit was thus conferred on the Phoenix Corporation in terms of increased value and increased rental value of the premises.[5] And the

---

**3.** See *Aylward v. Murphy*, 5 B.R. 510, (Bkrtcy. W.D.Mo.1979), to the following effect: "Constructive possession is defined to include property in the actual possession of a person who can hold it only as property of the estate in bankruptcy. 'Constructive possession occurs where the property ... is held by some other person who makes no claim to it, or ... is held by one who makes a claim which is not substantial and is colorable only.' 2 Collier on Bankruptcy para. 23.05[3], pp. 480–83 (1978). For, under *May v. Henderson, supra*, and its progeny, in the wake of the turnover order, Richard H. Snooks was under a duty to turn over to the estate all substantial monies coming into his hands. Generally, it is said that 'the possession of corporate property by the officers and agents of a bankrupt corporation will be deemed the possession of the bankrupt, and they are not adverse claimants.' *Kyle v. Stewart*, 360 F.2d 753, 758, 759 (5th Cir. 1966). This aphorism applies even more particularly and strongly in respect to monies held subject to a turnover order. For, although the corporate officer may have previously disposed of the specific monies for which the turnover order was issued, he remains nevertheless under a duty to pay such monies as come into his

possession, under his claim of right, toward satisfaction of the turnover order. 'The duty of a fiduciary to account for property intrusted to his care is fulfilled by delivery of the property; but if he has put it out of his power to deliver it, he may nevertheless be compelled to account for its worth ... [and] to make restitution of the value of the property which [he has] dissipated without a colorable claim of right.' *May v. Henderson, supra*, 268 U.S. at 118, 45 S.Ct. at 459. 'Any other rule would leave the bankruptcy court powerless to deal in an effective way with those holding property for the bankrupt, who, pending the bankruptcy proceedings, wilfully dispose of it by placing it beyond the reach of the court.' *Id.*"

**4.** This is evidenced by trustee's exhibits numbers 1 and 3 adduced in the hearing conducted in the court of bankruptcy.

**5.** This is shown, in part, by the testimony of the respondent, who admits that, for some period of time, the rental value of the premises will be increased in an amount equal to or exceeding the cost of the carpet. It was the testimony of Mr. Garvey at the hearing that "[w]e will not

facts clearly show that the Phoenix Corporation was, throughout the time period here in question, subject to the complete control and direction of the defendant Garvey,[6] particularly with respect to the transactions here in question, characterized as they are by the use of the corporation to benefit his relatives.[7]

Finally, on or about March 5, 1979, the Snookses paid back the $4,000 owed to Mr. Garvey, as noted above. This date was subsequent to the date of the final turnover order issued by the court of bankruptcy, January 20, 1978, as noted above. Thus, according to the authority quoted above, the money paid to Mr. Garvey was subject to that order and should have been turned over to the trustee in bankruptcy. The money, however, was "re-loaned" by Mr. Garvey to his sister, Janice L. Snooks. The evidence shows that, although Mr. Garvey had knowledge of the bankruptcy proceedings, he had no explicit knowledge of the issuance of the turnover order, nor of its terms and provisions.[8]

### Conclusions of Law

Under the principles, decisions, and authorities set out by this court in *Aylward v. Murphy, supra,* the monies paid to the Phoenix Corporation for beneficial improvements to the residence should be paid to the trustee herein in bankruptcy. The payments were made after the bankruptcy and when the defendant had knowledge thereof. Further, they conferred, as found above, a recognized and substantial benefit upon the

Phoenix Corporation (and thus upon Mr. Garvey[9]) in a magnitude at least equal to the sums thus paid.[10]

The trustee contends that the $4,000 "reloaned," as found above, should be turned over to him under the same reasoning, cases, and authorities. But, in applying that constellation of authority, the court must be mindful of the limit placed upon its applicability by the rubric of *South Falls Corporation v. Rochelle, supra.* That limit is the extent to which any current enrichment of the defendant can be traced to the monies which should have been paid into the estate in bankruptcy. "Had not the Bankrupt's dollar been transferred, [defendant] would have parted with one of its own. That dollar would have come from its own cash or by liquidation of its ample assets. In effect, it now has a dollar, either in cash or property, which it would not have had but for the transfer of bankrupt funds." *South Falls Corporation v. Rochelle, supra,* at 619. As of the date of the hearing in this case, that enrichment was of Janice L. Snooks, to whom the money had been "re-loaned," rather than Mr. Garvey, whose duty to pay the monies will arise if and when any monies are repaid to him on the $4,000 obligation.[11] Until then, the obligation to the estate in bankruptcy remains that of Richard H. and Janice L. Snooks.[12]

For the foregoing reasons, it is therefore

ORDERED AND ADJUDGED that the defendant William Garvey turn over to the

---

lose money on this if they [the Snookses] do move" and that he "can turn [the property] into rental property." He further testified that he believed that the installation of the carpet increased the rental value of each of the two units by $10 to $15 per month, for a total increased value of $20 to $30 per month.

6. See note 1, *supra.*

7. Nor can there be any question of the defendant's knowledge of the bankruptcy proceedings, although he states that he and his family studiedly ignored the events which took place thereafter.

8. See note 7, *supra.*

9. See note 1, *supra.*

10. See note 5, *supra.*

11. Under the rule of *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), the monies to be repaid to a bankruptcy estate are those taken from it or their "proceeds." In *South Falls Corporation v. Rochelle,* 329 F.2d 611, 619 (5th Cir. 1964), the money saved (i.e., the benefit conferred) is all that is recoverable by the trustee.

12. It is conceivable that, for the failure to turn over the subject monies to the estate, the trustee could seek a joint turnover order against the Snookses, which, if issued, could result in a levy against entirety property.

trustee herein in bankruptcy, forthwith and with reasonable dispatch, the sum of $9,727.42. It is further

ORDERED AND ADJUDGED that the plaintiff's complaint be, and it is hereby, in all other respects dismissed without prejudice.[13]