In the matter of Lawrence Mitchell ANDERSON, Debtor.

Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson, and Farmers and Merchants Bank of Hale, Defendants.

Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson and Missouri Farmers Association, Inc., Defendants.

Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson, and Millbank Mills, Inc., Defendants.

Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson and Community Bank of Chillicothe, Defendant.

Bankruptcy No. 81–00392–SJ.
Adv. Nos. 81–0381–SJ to 81–0384–SJ.

United States Bankruptcy Court, W. D. Missouri, W. D.

Oct. 29, 1981.

As Amended Jan. 27, 1982.

Hugh A. Miner, pro se.

John C. Franken, Carrollton, Mo., for Farmers & Merchants Bank of Hale.

Steven E. Faber, Columbia, Mo., for Missouri Farmers Ass'n, Inc.

Robert Cowherd, Chillicothe, Mo., for Community State Bank of Chillicothe.

Gerald Liles, St. Joseph, Mo., for Lawrence Mitchell Anderson, Bernice Anderson and William M. Anderson.

## SUPPLEMENTAL FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ALTERING AND AMENDING JUDGMENT OF JULY 10, 1981, SO AS TO DIRECT THE TURNOVER OF THE SUM OF $17,601.28 TO THE ESTATE OF BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

After a full trial, this court issued its findings of fact, conclusions of law, and final judgment on July 10, 1981, denying the complaint of a former trustee in bankruptcy for turnover of property of the debtor and his spouse of several different descriptions. It was the substance of the findings and conclusions then made by the court that all the property sought was held in a tenancy by the entirety by the debtor and his wife and therefore could not constitute property of the estate. See *Matter of Anderson*, 12 B.R. 483 (W.D.Mo.Bkrtcy. 1981).

Timely, the creditors Ray and Sally Zehr moved for leave to intervene as parties plaintiff to prosecute this action further in the name of the trustee and to alter or amend the judgment, or alternatively, for a new trial. It was the contention of the Zehrs in support of the latter motion that the court had erred in adjudging a quantity of soybeans to be entirety property when at one time they had been deposited in a gran-

ary with a receipt issued in the debtor's name only and that it further erred in respect to the sum of $17,601.28 on deposit, as of the date of the commencement of the title 11 proceedings, in the Farmers and Merchants Bank of Hale, Missouri, because there had been an earlier judgment on the same issue in a state court to the contrary effect and that judgment bound this court to follow it under the doctrine of collateral estoppel.

Because the successor trustee declined further to prosecute the action initiated by his predecessor, the court granted the Zehrs' motion to intervene as a party plaintiff to prosecute this action further in the name of the trustee for the benefit of the general creditors.[1] The court, however, by means of its order entered in this action on August 13, 1981, denied the motion to alter or amend judgment for the following reasons which were stated in that order:

"The motion which has now been filed by the creditors Zehr raises principally factual issues which the court is requested to review under very general 'equitable' principles so as to recondition the judgment and cause it to be reissued in favor of the estate in bankruptcy. Thus, it is asserted with respect to certain of the growing crops, the proceeds of sale of which the court held to be entirety property, that they should be held to be solely the property of the debtor because they were deposited with a granary or warehouse on a receipt which was issued in his name only. But it is neither stated nor shown that the granary or warehouse receipt constituted a written agreement between the debtor and his spouse which controlled the alienability of the soybeans which were listed thereon. In this respect it does not have the legal efficacy of the signature card signed by both parties and describing their rights in the bank account, or the express statements of Bernice Anderson to the effect that

---

1. When a trustee fails adequately to prosecute an action on behalf of the estate and its general creditors, the court may grant a creditor permission to prosecute the same action in the name of the trustee. See *Dallas Cabana, Inc. v. Hyatt Corporation*, 441 F.2d 865, 868 (5th Cir. 1971).

she had agreed that her husband should make all the withdrawals from the Chillicothe bank account. It does not purport in any respect to be an agreement between Lawrence Mitchell Anderson and Bernice Anderson as to how their joint property is to be treated or by means of which one surrenders all title and interest in the property to the other. There is not one scintilla of evidence that Bernice Anderson ever surrendered her interest in the soybeans, or gave Lawrence Mitchell Anderson permission to alienate or dispose of the property without her consent or otherwise transferred the presumed entirety interest in any way into the sole ownership of Lawrence Mitchell Anderson. Rather, the uncontradicted evidence is all to the contrary: that the entire farming operation was, and had been for years, treated as the entirety property of Lawrence Mitchell Anderson and Bernice Anderson; that the soybeans were harvested as part of the entirety operation; and that it was the express, albeit unwritten, intention of the Andersons that the soybeans be regarded as entirety property. Lawrence Mitchell Anderson's storing the soybeans under his name is quite consistent with the other evidence, for it does not evidence Bernice Anderson's assent to a consented-to disposition or usurpation of sole title by Lawrence Mitchell Anderson.

"Counsel now complains that his case must be reckoned as chiseling ineradicably in immutable stone the principle that the existence of a tenancy by the entirety may be established by the testimony of the tenants themselves. But that principle does not seem so readily impugnable when it is considered that, in this action, with respect to the soybeans, the testimony is in all material respects uncontradicted. For, from the myriad of possibilities of evidence which might contradict that intention, the former trustee did not select a single one to present in respect of the soybeans. Nor do the movants now suggest that there is any evidence which might have been or might yet be produced in this regard. Accord-ingly, it appears that, without more, the movants' contentions in respect of the soybeans must be denied."

In respect of the issue of collateral estoppel, however, which was raised for the first time in the action on the motion to alter or amend judgment or for new trial, the court, making the following observations, granted a new trial:

"It is a general proposition of bankruptcy law that when a trustee fails to prosecute an action or an issue, a creditor, upon application, may be granted leave to prosecute the matter in his stead. That aphorism would be applicable in this case except for its inconsonance with the purpose of the rules governing new trials—to prevent the trial and decision of a single action in stages. Such is unfair, ordinarily, to the nonmoving party who has relied upon the challenged judgment.

"In this action, however, if the movants' allegations are true, and the defendants have secured a judgment in a state court by telling a contrary story, then this notion of unfairness is without any meaning in this action. Therefore, on this lone issue, this court will grant a new trial, conditioned, however, on the costs of retrial being taxed against the movants in the event they fail to prove the taking of irreconcilably different positions in the state court action and in this action."

In the new trial conducted on August 27, 1981, the intervening plaintiffs made the following showing: On or about November 16, 1979, they filed a "third amended petition" in the Circuit Court of Caldwell County, Missouri in the case of *Ray Zehr and Sally Zehr v. Lawrence Anderson and Bernice Anderson*, No. CV179–177–CC. The third amended petition was in three counts. The first count alleged that, upon the defendants' agreement to pay therefor the plaintiffs delivered 150 sheep to the defendants on March 24, 1979; that "Defendants have refused to pay for the said sheep even though demand for payment has often been made"; that "Defendant Bernice Anderson claims some sort of interest in said sheep and in [s]ome respects entered into the con-

tract for the purchase of said sheep"; that the agreed-upon sale price of the sheep was $110 per head; and that, therefore, the plaintiffs have suffered damages in the sum of $16,500.00. Count two, on the basis of the same factual allegations, constituted a petition for damages in the sum of $165 per month, plus interest, from March 24, 1979, for "incidental damages in the form of interest charges." And count three of the state court petition was a claim for $357 actual damages alleged to have been incurred when plaintiff's truck became stuck on a muddy road because of "Defendant's giving Plaintiffs wrong delivery instructions and directions to his farm [which] was done willfully, maliciously and intentionally by Defendants." In the same count, punitive damages were sought for defendant's allegedly "fraudulently removing said sheep from Plaintiff's possession without paying the agreed purchase price" after the truck carrying the sheep became stuck. The evidence adduced in the new trial of the action at bar, furthermore, demonstrates that a full trial was held in the state trial court, in the course of which Bernice Anderson unequivocally disclaimed any interest in the sheep.[2] At the close of all the evidence, the state trial judge directed a verdict in favor of the defendant Bernice Anderson,[3] although the jury later rendered a verdict in favor of the Zehrs and against the defendant Lawrence Mitchell Anderson in the sum of $15,000.00.

On the basis of this record, the intervening plaintiffs contend that the issue of the interest of Bernice Anderson in the sheep has been adjudicated; that the state court conclusively found that she had no interest in the sheep and accordingly dropped her as a party defendant; and that, therefore, the issue has been adjudicated and Bernice Anderson cannot be regarded as a tenant by the entirety in the sheep nor the proceeds of their sale.

The defendants dispute these contentions and proposed conclusions, stating that:

"[t]he position of the Interveners that the granting of a directed verdict in favor of Bernice Anderson because the Court found that she had no *ownership* interest in the sheep is not supported by the facts, a simple and clear reading of the plaintiff's petition, the instructions submitted to the jury, the trial Court's ruling, or on any other legal basis. *Ownership* was not an issue in any way in the Caldwell County action ... The factual issues raised, as in all contract actions, were of offer, acceptance, whether or not the sheep were sold to the Andersons on approval and what was the contract price of the sheep per head. Not once was there ever raised the issue of *ownership* in either the pleadings of the plaintiff or the responsive pleadings of the defendant. The plaintiffs submitted their case on damages due to the breach of the defendants and received judgment against Lawrence M. Anderson because of his breach." (Emphasis in criginal.)

An analysis of the facts pleaded by the plaintiffs Zehr, however, shows that the third amended petition in the state court states a cause of action in conversion as well as in breach of contract. The law of Missouri is clear to the effect that it is conversion to keep property of another, or

---

**2.** This was admitted by the evidence adduced by the defendants in the hearing conducted by this court on August 27, 1981. Sally Zehr additionally testified without being effectively contradicted that Bernice Anderson testified before the jury in the state court action that she had no interest in the sheep and that Lawrence Mitchell Anderson testified to the same effect. No objection was made to the admissibility of their testimony in this regard as testified to by Mrs. Zehr.

**3.** A copy of which was adduced in evidence in this action. The prior judgment which is con-

tended to have the effect of a collateral estoppel is admissible in evidence, but "(i)n order to determine what matter has been decided in the preceding action, the entire record therein is to be considered. The inquiry is not limited to the judgment, but extends to the pleadings, the verdict or findings of the court. The scope and meaning of the judgment may be determined in the light of all the matters the court was required to consider in arriving at the judgment excluding matters collaterally or inferentially decided." 1B Moore's Federal Practice para. 0.408(1), p. 955, n. 11 (1980).

its proceeds, without paying for it or returning it on demand.[4] Thus, in the state court action, it was effectively alleged by the plaintiffs Zehr that the defendants Lawrence and Bernice Anderson gained possession of the sheep by fraud and refused either to pay for them or return them.[5] Further, the Missouri authorities are clear to the effect that, in conversion, not only the converter is liable, but also any person who benefits from the conversion. "Every person is liable in trover who personally or by agent . . . commits an act of conversion, or who participates in the conversion by instigating, aiding, or assisting another, or who knowingly benefits by its proceeds in whole or in part." 89 C.J.S. *Trover and Conversion* § 77, pp. 575, 576 (1955). See also *Darling & Co. v. Fry*, 24 S.W.2d 722, 724 (Mo.App.1930) (holding that, although it is not necessary that the defendant in a conversion action gain a personal benefit, liability in conversion can be predicated on benefitting from the conversion); *Coleman v. Pioneer Studebaker, Inc.*, 403 S.W.2d 948, 952 (Mo.App.1966).

■ Therefore, the state court's directing a verdict in favor of the defendant Bernice Anderson must necessarily, under the governing law of Missouri, be interpreted as a

holding that Bernice Anderson had received no benefit from the conversion of the sheep, nor had the entiretyship of Lawrence M. Anderson and Bernice Anderson.

■ This court therefore agrees with the defendants' statement that "collateral estoppel forecloses a party from litigating an issue only if the exact issue was unambiguously decided in the earlier case."[6] But for the foregoing reasons, it must be concluded that it has previously necessarily been determined that the sheep were never entirety property.

■ Otherwise, the evidence which has previously been adduced in this court in the hearing which preceded the rendition of the initial judgment that the $17,601.28 in the Farmers and Merchants Bank of Hale, Missouri, was comprised of the proceeds of sale of the sheep. As was found in the challenged judgment of July 10, 1981, "[t]his amount is demonstrated by the uncontradicted evidence to be the proceeds of certain sheep . . ." *Matter of Anderson*, 12 B.R. 483, 486 (W.D.Mo.Bkrtcy.1981). Counsel for the defendants now challenges this finding as erroneous. But it is warranted by the evidence adduced in the hearing of May 11, 1981.[7] And, furthermore, the defend-

---

4. "The tort of conversion has had a long and involved history. Conversion is a comprehensive yet 'fascinating' tort. In modern law conversion 'is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' Restatement of the Law, Second, Torts, section 222A (1965). Conversion may be committed in many ways. Restatement of the Law, supra, section 223. 'Conversion may be proved in one of three ways: (1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; (3) *by refusal to give up possession to the owner on demand.*' *Arnold v. Prange*, 541 S.W.2d 27, 30 (Mo.App. 1976)." *Breece v. Jett*, 556 S.W.2d 696, 709 (Mo.App.1977) (Emphasis added.).

5. See page 5 of the text hereof, *supra*, quoting portions of the state court complaint alleging fraudulent removal of the sheep from the plaintiffs' possession without paying the purchase price, despite demand therefor, and Bernice

Anderson's claiming "some sort of interest in said sheep."

6. It is to be noted, however, that "(i)n discovering what issues were determined by the judgment in a prior action, the court in the second action is free to go beyond the judgment roll, and may examine the pleadings and the evidence in the prior action. And if the rendering court made no express findings on the issues raised by the pleadings or the evidence, the court may infer that in the prior action a determination appropriate to the judgment rendered was made as to each issue that was so raised and the determination of which was necessary to support the judgment." 1B Moore's Federal Practice para. 0.443(4), p. 3913 (1980).

7. A review of the undersigned's hearing notes for the hearing on May 11, 1981, upon which the prior, challenged judgment was based, shows that Lawrence Mitchell Anderson and Bernice Anderson both testified in that hearing that the amounts in the Farmers and Merchants Bank of Hale were the proceeds of the sale of the sheep.

ants were granted explicit permission, in view of their challenge to the finding, to offer evidence on this factual issue in the new trial. But again, the testimony of Lawrence Mitchell Anderson warrants the conclusion that the monies on deposit in the Farmers and Merchants Bank of Hale as of the date of his filing a petition for relief under title 11 were proceeds from sale of the sheep.[8]

It is therefore, accordingly,

ORDERED AND ADJUDGED that the judgments of July 10, 1981, be, and it is hereby, amended in part to require the defendant Lawrence Mitchell Anderson to turn over to the trustee in bankruptcy the sum of $17,601.28 within 30 days of the date of entry of this order or within such additional time as the court may grant for good cause shown in writing within those 30 days.

---

**8.** On cross-examination in the hearing of August 27, 1981, Lawrence Mitchell Anderson testified that all the proceeds of sale of the sheep went into the bank account, although some of it later was spent for feed bills. Further, as noted above, note 7, *supra*, the evidence in the hearing of May 11, 1981, was to the effect that the money in the bank account in the Hale bank was from sale of the sheep and the testimony in the hearing of August 27, 1981, does not sufficiently contradict the prior testimony. The defendant Lawrence Mitchell Anderson contends in this regard that, although the proceeds of the sale of the sheep were paid into the bank account in an amount equal to or exceeding its balance as of the date of the petition for relief under title 11, they were paid down to a lower amount by payments out for expenses and the like. But, under the applicable law, the debtor must make up to the estate the amounts which he has paid out of the total amount due it. See *South Falls Corp. v. Rochelle*, 329 F.2d 611, 616 (5th Cir. 1964), to the effect that the defendant in a turnover proceed-ing who has benefitted by use of the funds that would have otherwise gone into the estate in bankruptcy should pay into the estate the amount of the funds used. "Turnover relief is proper ... where '... existing chattels or their proceeds' are available. Here the 'proceeds' of the cash are the remaining assets saved by this misappropriation of bankrupt funds."

Thus, when it has been admitted by Lawrence Mitchell Anderson that he deposited all proceeds from the sale of the sheep in the Farmers and Merchants Bank of Hale and the judgment of the Circuit Court of Caldwell County establishes that the value of those sheep was greater than the amount in that account as of the date of the filing of the petition for relief in this case, the available monies representing the value of the sheep should be paid to the bankruptcy estate. Mr. Anderson cannot escape the duty to turn over this value by subtracting from it, rather than from other available monies in the bank account, the amounts paid out for certain expenses. *South Falls Corp. v. Rochelle, supra.*