In the Matter of Daniel Dean CONNER and Tami Marie Conner, Debtors.

ERICSON STATE BANK, Plaintiff,

v.

Daniel Dean CONNER and Tami Marie Conner, Defendants.

Bankruptcy No. 85–02602–SJ.
Adv. No. 85–0673–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

March 11, 1986.

Mark G. Stingley, St. Joseph, Mo., for plaintiff.

Robert D. Colley, St. Joseph, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECREE DECLARING DEFENDANTS' INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $2,000 TO BE NONDISCHARGEABLE IN BANKRUPTCY AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SAME SUM FROM DEFENDANTS

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff seeks a decree of nondischargeability of the defendants' indebtedness to it in the sum of $2,000 which represents the proceeds of sale of a certain 1977 Chevrolet Fleetside pickup in which the plaintiff held a valid and perfected security interest. The action came on before the court for hearing on February 27, 1986, in St. Joseph, Missouri; whereupon, the plaintiff appeared by counsel, Mark G. Stingley, Esquire, and the defendants appeared personally and also by counsel, Robert D. Colley, Esquire. The evidence which was then adduced showed that the debtors' 1977 Chevrolet Fleetside pickup had, by the early part of 1985, deteriorated considerably; that they had originally paid about $3,200 for it and had a balance then owing on it in the approximate sum of $2,200; that the defendant Daniel Dean Conner discussed the situation with his wife, the defendant Tami Marie Conner, about selling the pickup which, according to the testimony of Daniel Dean Conner, was "falling to pieces" and "maybe if we could get an agreement to pay it off, we could get back on our feet"; that Mrs. Conner agreed that an attempt should be made to sell the vehicle; that Mr. Conner thereupon telephoned the officers of the plaintiff bank to see if he could obtain permission to sell the vehicle; that this culminated in a telephone conversation between the defendant Daniel Conner and Jack Paulsen, the executive vice president of the Ericson State Bank, the content of which is a subject of diverging testimony; that Mr. Paulsen testified that he agreed to release the title to the defendants for the purpose of selling the vehicle for the sum of $2,000 on condition that the $2,000 proceeds be paid over to the plaintiff bank and that that sum would extinguish the defendants' indebtedness to the plaintiff bank; that the defendant Daniel Dean Conner, on the other hand, testified that Mr. Paulsen agreed to release the title to him on no more than Daniel Dean Conner's statement that he would use the $2,000 proceeds to pay some of his and his wife's outstanding bills and give over any sum remaining to the bank; that approximately two months then passed and the bank officers received no payment and heard nothing from the defendants; that, after an inquiry by mail had drawn no reply, bank officers Paulsen and Dennis Sturek travelled to the defendants' home to make further inquiry; that, upon arrival there, the officers first contacted Mrs. Conner and she repaired to the house and Mr. Conner then came out in the yard and advised the officers that the 1977 Chevrolet Fleetside Pickup had been sold and that he had purchased a replacement vehicle of a value of approximately $3,200 (as to which the defendant Daniel Dean Conner testified he had made no downpayment and was required to make monthly payments of $146.00 and as to which he currently owes a balance of $1,000); that the bank officers then requested that the debtor grant them a security interest in the new, replacement vehicle and left "lien papers" with the debtors, but the debtors failed and refused to fill those papers out and return them to the plaintiff bank; that the defendant Daniel Dean Conner states that he utilized the $2,000 proceeds of the sale by spending some $1,930 for "living expenses" of the debtors; and that, when he had finished paying those living expenses, there was virtually nothing left to pay to the bank.

### Conclusions of Law

Section 523(a)(6) of the Bankruptcy Code provides for the nondischargeability of debts created by willful and malicious injury to property, including injury brought

about by conversion of that property. The debtors in this action contend that there was no conversion of the $2,000 proceeds of sale of the collateral of the plaintiff because he had the permission of the plaintiff bank to sell the collateral and keep all—or substantially all—the proceeds for himself. But his testimony to this effect is wholly incredible. The court bases this conclusion not only on the appearance and demeanor of the debtor Daniel Dean Conner during his testimony, but also on the basis that it is wholly unlikely and improbable that any bank officer would simply agree to release collateral of significant value to the debtors and simply agree to let them have it as a gift. The debtor Daniel Dean Conner, however, in advancing this testimonial proposition, asks the court to believe that such was precisely the plaintiff's intention. In the face of more credible testimony by the bank officers to the contrary, the court cannot accept this proposition. It is accordingly found that the agreement was that the plaintiff could permit sale of the vehicle for $2,000 on condition that defendants would pay the proceeds over to it in full compromise and settlement of a greater amount then due it. Because the debtors' use of these proceeds for their own benefit was unauthorized, this court must conclude that such use constituted a conversion within the meaning of § 523(a)(6), *supra.*

▪ The court is mindful that a mere technical conversion is insufficient to cause the debt thereby created to be nondischargeable;[1] that it is necessary that the evidence also show the conversion to have been willful and malicious.[2] Further, as this court has pointed out on numerous prior occasions, the controlling decisions in this district require that the "willful and malicious" character of the conversion be demonstrated by evidence of an "actual, subjective" intent showing actual bad faith. See *Matter of Ireland,* 49 B.R. 269, 271–72, n. 2 (Bkrtcy.W.D.Mo.1985), and case decisions there cited. Recent appellate authority, however, indicates that the more "objective" standard, which defines "willful and malicious" as the intentional violation of a known right of another, should be applied.[3] The facts of this case, however, meet either standard. There was no ambiguity in the governing security agreement to the effect that permission of the plaintiff was a necessary prerequisite to the sale of the collateral. And the only credible testimony is to the effect that the defendant Daniel Dean Conner promised the plaintiff that he would pay the $2,000 proceeds of sale of the plaintiff's collateral over to plaintiff; and that he not only did not do so, but that he disposed of the monies over a period of time of a month or so, deliberately and with calculation using for his own benefit and that of his wife the monies which he well knew not to be his and to belong to the plaintiff. It must additionally be remembered that the testimony of the bank officers respecting their exacting a promise from the defendants, once the conversion was discovered, to grant a security interest in the replacement vehicle, was never contradicted. Therefore, the acts of the defendants in initially using the property of the plaintiff without authorization extended over a period of time, as did their subsequent acts in continuing to delay the plaintiff's enforcement of its rights. This court

---

1. "(A) technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge." 1A Collier on Bankruptcy para. 17.17, pp. 1654, 1655 (14th ed. 1976).

2. See note 1, *supra.*

3. "To require specific malice or some other strict standard of malice for non-dischargeability of a debt under the Bankruptcy Code would undermine the purposes of (section 523(a)(6)) and place 'a nearly impossible burden' on a creditor who wishes to show that a debtor intended to do him harm ... To require such specific malice would restrict section 523(a)(6) to the small set of cases where the debtor was foolhardy enough to make some plainly malevolent utterance expressing his intent to injure his creditor." *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1009, 1010 (4th Cir. 1985). Under this holding, it is sufficient to show that one acted "deliberately and intentionally in knowing disregard of the rights of another." 779 F.2d at 1010.

has held on a prior occasion that the taking of repeated action over a period of time to effect a conversion is sufficient to establish the willful and malicious character of the conversion. *Matter of Norton,* 21 B.R. 725, 729 (Bkrtcy.W.D.Mo.1982). And this principle comports with common sense, for it is unimaginable that repeated instances of conduct which first accomplish the conversion and then attempt to ensure that the benefits thereof are solely enjoyed by the debtors are without knowing purpose. The court therefore concludes that the conversion was willful and malicious within the meaning of § 523(a)(6), *supra.*

█ It appears to be the final contention of the defendants that all of the acts of conversion were committed by Daniel Dean Conner alone; that defendant Tami Marie Conner did not actually participate in the conversion; and that she should not, therefore, be liable for it. But, under the governing state law,[4] not only the converter is liable in conversion, but also any person who benefits from the conversion. *Matter of Anderson,* 15 B.R. 346 (Bkrtcy.W.D.Mo.

1981), and cases and authorities therein cited.[5] And evidence was adduced by the defendants themselves that the converted proceeds of sale were used to defray the "living expenses" of both of them. Nor do the facts in evidence free her of the willful and malicious state of mind which is necessary to make her liability nondischargeable. She was consulted by defendant Daniel Dean Conner when he initially formed his intention to "get free of debt." She knew of his disposition of the vehicle and of his nonpayment of the proceeds of sale to the bank. And she, like her husband, failed and refused to grant the security interest in the replacement vehicle which would have cured the wrong. The evidence clearly shows the existence of a willful and malicious disposition on the part of the defendant Tami Marie Conner. Cf. *Matter of Major,* 44 B.R. 636, 639, n. 12 (Bkrtcy.W. D.Mo.1984).[5a]

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that defendants' indebtedness to

---

**4.** "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protect. Com. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). "It is by the law of the state that the existence and nature of the debts owed by the bankrupt as of the date of bankruptcy must be determined ... It follows that the determination of dischargeability *vel non* must ordinarily be made in terms of the governing state law." *Matter of Transport Clearings-Midwest, Inc.,* 16 B.R. 890, 894, n. 12 (Bkrtcy.W.D. Mo.1979).

**5.** "Every person is liable in trover who personally or by agent ... commits an act of conversion, or who participates in the conversion by instigating, aiding, or assisting another, or who knowingly benefits by its proceeds in whole or in part." 89 C.J.S. *Trover and Conversion* section 77, pp. 575, 576 (1955); *Matter of Anderson,* 15 B.R. 346, 350 (Bkrtcy.W.D.Mo.1981); *Darling & Co. v. Fry,* 24 S.W.2d 722, 724 (Mo.App.1930); *Coleman v. Pioneer Studebaker, Inc.,* 403 S.W.2d 948, 952 (Mo.App.1966) ("Livingston intentionally and knowingly aided and assisted in the conversion of plaintiff's money ... Both defendants clearly acted in opposition to the rights of plaintiff concerning the money in question

and were guilty of conversion.") Further, because the defendant Tami Marie Conner benefitted from the conversion, as did her husband, both meet the requirements of the "special benefit" doctrine of *Matter of Whitlock,* 449 F.Supp. 1383 (W.D.Mo.1978). See also and compare *In re Long,* 774 F.2d 875, 882, n. 10 (8th Cir.1985). Therefore, this court need not consider the question of whether this line of cases intends to override the applicable state law on the question of whether a converter who receives no benefit from the conversion but only converts property to the benefit of another is liable in conversion. Cf. *Matter of Transport Clearings-Midwest, Inc.,* 16 B.R. 890 (Bkrtcy.W.D.Mo.1979).

**5a.** "A person may be guilty of a conversion by actively aiding or abetting or conniving with another in such an act.... Indeed, one may be liable for assisting another in a conversion though acting innocently. These rules are particularly applicable where the defendant received benefit from the conversion, and subsequently approved and adopted it." 18 Am. Jur.2d *Conversion* sec 120, p. 231 (1965). In this action, the defendant Tami Marie Conner was active in the planning stage of the transaction; she knew or should have known that the proceeds of sale should have been turned over to the plaintiff; and she knowingly benefitted from the expenditure of significant portions of those proceeds for her living and other expenses.

plaintiff in the sum of $2,000 [6] plus interest be, and it is hereby declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that plaintiff have and recover the same sum plus interest from February 28, 1985, at the legal rate [7] from the defendants, jointly and severally.

---

**6.** "Our courts have stated the general rule for determining damages in suits for conversion of ordinary personal property as, 'the reasonable market value of the personal property at the time of the conversion.' *Breece v. Jett,* 556 S.W.2d 696, 709 (Mo.App.1977)." *Weldon v. Town Properties, Inc.,* 633 S.W.2d 196, 198 (Mo. App.1982).

**7.** " '(I)n actions for conversion, in order to give the injured party full indemnity, interest is allowed on the value of the property from the date of its conversion.' " *Independence Flying Service v. Ailshire,* 409 S.W.2d 628, 632 (Mo. 1966). "Hence in trover for wrongful conversion ..., an award 'in the nature of interest' is ... actually an admeasurement of 'damages by the ruling rate of interest,—not as interest, but by way of compensatory damages.' " *Commercial Cr. Corp. v. Joplin Automobile Auction Co.,* 430 S.W.2d 440, 444, 445 (Mo.App.1968). The "ruling rate of interest" is 9% per annum. Section 408.020 RSMo.