M. W. ARNOLD and Milton Spilker, Respondents-Plaintiffs,

v.

Emerson PRANGE, et al., Appellants-Defendants.

No. 36873.

Missouri Court of Appeals, St. Louis District, Division Four.

July 13, 1976.

Motion for Rehearing or for Transfer Denied Aug. 18, 1976.

Application to Transfer Denied Oct. 12, 1976.

**28**

Kenneth D. Schloman, Rolin T. Boulware, Shelbina, Rendlen & Rendlen, Charles E. Rendlen, Jr., Hannibal, for appellants-defendants.

Mary F. Wasinger, Wasinger & Parham, Hannibal, Hadley E. Grimm, Macon, for respondents-plaintiffs.

SMITH, Chief Judge.

Defendants' appeal from a judgment against them for $924 actual and $1500 each punitive damages for their alleged conversion of plaintiffs' cattle. We reverse for failure of plaintiffs to make a case.

On August 28, 1972, defendants found three steers[1] upon their property. They promptly called the sheriff and asked him to notify plaintiffs that defendants believed plaintiffs' cattle were loose on defendants' land. This the sheriff did immediately. After some period of time during which plaintiffs did not show up, the cattle were taken to a pen on defendants' farm. The next morning defendants sent a certified letter to plaintiffs which was received on the same day. That letter read:

> Do you have any cattle gone? We have some yearling cattle shut in our lot. If you have some gone and can identify these—you may claim them by paying for damage.

Plaintiffs, after hearing from the sheriff, counted their cattle on August 28th and 29th and determined that three were missing. At no time did plaintiffs ever advise defendants that the cattle belonged to them. On September 13th, an adjuster for an insurance company, which covered plaintiffs, discussed with defendants' attorney a claim for damages from the trespassing of cows upon defendants' property. Plaintiffs' evidence does not indicate that they were aware of when the adjuster might talk to defendants, although at some time they had advised their company of the letter from defendants. On September 21st, three appraisers were appointed to determine the damage and on that day they made their report which read:

> Its been to (sic) long since the damage has been done to show now. Some beans has been already combined & it impossi-

ble to tell how much damage were really done. As now no damage.

On September 26, 1972, the sheriff served a writ of replevin upon defendants but was unable to locate the three steers. The record does not show that plaintiffs at any time before the filing of that replevin suit or this conversion action on September 29, ever identified the cattle as theirs, tendered any damages, or tendered any compensation to defendants for caring for the animals. Even at trial plaintiffs did not identify the cattle as theirs. In March 1973, defendants received one hundred dollars in consideration for a covenant not to sue plaintiffs for damages done by "3 yearling cattle of unknown ownership." That covenant also expressly stated that acceptance of the $100 "is not construed as an admission by the Pranges as to the ownership by M. W. Arnold and Milton Spilker of the 3 yearling cattle . . .." The covenant did not purport to cover compensation for taking care of the animals. Plaintiffs' cattle had on prior occasions trespassed on defendants' land and at the time of the September 13 meeting between the adjuster and attorney a replevin suit against defendants by plaintiffs for earlier trespassing cattle was pending.[2]

Defendants' evidence, uncontradicted by any non-speculative evidence, was that the three steers left their premises on September 12. There was some variation as to whether one escaped and the others were then released or whether all three were released by defendants. We do not believe it makes any difference.

We deal first with a contention concerning jurisdiction. Appellants contend that Sec. 272.230 RSMo 1969[3] places exclusive jurisdiction of the cause of action in the Magistrate Court. We do not agree. Sec. 272.230 establishes the respective rights and responsibilities of the owner of

---

1. Considering the 511 page transcript, the number of extraneous issues tried and the general conduct of the trial, we cannot but speculate that counsel overlooked that a common operation had converted the subject matter of the suit from bull to steer.

2. Defendants' uncontradicted evidence was that that suit was also brought without notice to defendants of plaintiffs' claim.

3. That statute, in pertinent part, reads:
   "If any horses, cattle or other stock trespass upon the premises of another, the owner of the

the livestock and the person taking them up. The jurisdiction of the Magistrate Court is invoked only where the parties cannot agree on the amount of damages caused by the stock or the reasonable compensation for taking them up. The procedure in Magistrate Court is to enforce the lien of the taker-up and to establish what he is entitled to. We do not find that the statute was intended to or does abolish or supercede the common law action of conversion.

■ We turn to the merits. It is in that area that the provisions of Sec. 272.230 assume critical importance. Conversion may be proved in one of three ways: (1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; (3) by a refusal to give up possession to the owner on demand. *Glass v. Allied Van Lines Inc.*, 450 S.W.2d 217[5–8] (Mo.App.1970); *German American Bank v. Brunswig*, 107 Mo.App. 401, 81 S.W. 461 (1904). We examine those in turn.

■ There was certainly no tortious taking. Sec. 272.230 provides that the landowner who finds livestock trespassing on his land, if it is a second trespass, may put up the animals, take good care of them, and immediately notify the owner. Each of these things defendants did when they took possession of the cattle. Having followed the statute, there could be no tortious taking.

■ Nor, did defendants make any use or appropriation contrary to plaintiffs' ownership. The letter to plaintiffs offered possession upon compliance with the statute. Plaintiffs contend that the defendants' action in turning the cattle out on September

12 supplies this element. We think not. The statute does require that the taker-up take good care of the animals. But, we do not accept plaintiffs' contention that that means forever. The statute requires immediate notification to the person believed to be owner. That was done here. The statute does not provide specifically how soon the owner must respond to the notification, but we believe it implicit that he also must do so immediately. The taker-up cannot be charged with a continuing duty to maintain, at his expense, the cattle of another unknown to him. While we need not and do not attempt to determine the full meaning and ramifications of Sec. 272.230, it is questionable that the statute warrants the landowner in taking possession of the animals if this is the first trespass of a particular owner's animals. There is certainly no provision for reimbursement of compensation for care or any lien against the animals created in that circumstance by the statute. In the absence of immediate identification by the owner, the taker-up may not be able to determine his right to possession of the animals under the statute. The option rests in the landowner as to whether he will take-up the animals or expel them. See *State v. Sillbaugh*, 250 Mo. 308, 157 S.W. 352[5] (1913). We find nothing in the statute that says that such option once made, cannot thereafter be changed, so long as the taker-up takes good care of the animals while in his possession, particularly where no one has claimed the animals.

■ This case also points up rather dramatically why immediate response is required from the owner. The report of the appraisers indicates that the inspection for damages was made more than three weeks after the cattle were found and that *at that*

animal shall for the first trespass make reparation to the party injured for the true value of the damages sustained, to be recovered with costs before a magistrate, or in any court of competent jurisdiction, and for any subsequent trespass the party injured may put up the animal or animals and take good care of them and immediately notify the owner, who shall pay to the taker-up the amount of the damages sustained, and such compensation as shall be reasonable for the taking up and keeping of the

animals, before he shall be allowed to remove them, and if the owner and taker-up cannot agree upon the amount of the damages and compensation either party may make complaint to a magistrate of the county, setting forth the fact of the disagreement, and the magistrate shall be possessed of the cause, and shall issue a summons to the adverse party and proceed with the cause as in other civil cases. . . ."

*time* it was too late to determine what damage had been done. The report does not say, as plaintiffs contend, that no damage had been done, but that it was too late to determine such damage. Here the damaged beans had been harvested and defendants' damage could not be assessed. This was not the fault of defendants, who moved with the promptness required by the statute, but because the plaintiffs, for some unknown reason, elected not to claim the cattle immediately. Fifteen days passed from the time plaintiffs were aware that their cattle were on defendants' property until they were turned out by defendants and another 14 days passed before plaintiffs first notified defendants that the cattle belonged to plaintiffs. We conclude that here the evidence clearly established defendants' right to turn out the cattle after 15 days when no notification by plaintiffs of their ownership or willingness to assume their statutory obligation to pay defendants for their damages and compensation for the keeping of the cattle had been received. It is neither just nor equitable to require defendants to be more concerned about the cattle than the owner. Plaintiffs may not premise their recovery here upon the failure of defendants to retain the cattle in their possession after plaintiffs failed to respond to the letter.

▇ As to the third alternative, plaintiffs cannot recover for two reasons. No legally sufficient demand was made by plaintiffs. The only demand made was in the replevin suit on September 26, 1972. But, plaintiffs were not then entitled to possession of the cattle because they did not tender the compensation reasonable for the taking up and keeping of the cattle. Until they had paid defendants for the damages and made such compensation, they were not entitled to the possession of the cattle under Sec. 272.230. To this day they have not made such a tender.

▇ Secondly, the evidence does not support a conclusion that on September 26, 1972, defendants had the cattle in their possession to return upon demand. Defend-

ants' evidence was that the cattle had been released on September 12. Even if the jury chose to reject that evidence, it was plaintiffs' burden to establish possession or control in defendants on the date of demand. Plaintiffs produced two witnesses who testified that in September (the date unspecified) they had seen two black-faced cows and one white-faced cow standing by themselves in defendants' field socially removed from the other cattle in the field. One of the plaintiffs testified that when strange cattle are placed into a field "at first" they go off and stand by themselves "nine times out of ten". Plaintiffs contend this evidence is sufficient to support a finding that defendants had the cattle on September 26. We disagree. When this kine social phenomenon occurred is left to speculation, whether it was "at first" or not is unanswered, how long "at first" is is left to sheer conjecture. Plaintiffs' cattle were not branded nor in any other way marked for identification.

"The burden was upon the plaintiffs to prove by a preponderance of the evidence that the identical cattle in defendant's possession were the cattle of the plaintiffs. . . . It is true this may be proved by circumstantial evidence but a verdict cannot stand that is based upon suspicion, conjecture, guesswork, surmise or mere possibility, only. There must be substantial evidence and in this case, it is lacking." *Hayes v. O'Dell,* 236 S.W.2d 367[2, 3, 4] (Mo.App.1951).

Three commonly colored, socially independent cattle standing in defendants' field sometime in September does not carry plaintiffs' burden that defendants had the cattle in their possession on September 26.

Judgment reversed.  ·

NORWIN D. HOUSER and ALDEN A. STOCKARD, Special Judges, concur.