In the Matter of KORAN ENTERPRIS-
ES, INC., Debtor.

ASSOCIATES FINANCIAL SERVICES
COMPANY OF TEXAS,
INC., Plaintiff,

v.

KORAN ENTERPRISES, INC., Kevin K.
Koran, Kathleen D. Koran, Fred M.
Cox, Dorothy D. Cox and Carston C.
Johannsen, Defendants.

Bankruptcy No. 85–01612–1–3–11.
Adv. No. 85–0281–1–3–11.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Feb. 21, 1986.

322

Michael R. Roser, Berman, Deleve, Kuchan & Chapman, Kansas City, Mo., for plaintiff.

David B. Sexton, Schulz, Bender, Maher, & Blair, P.C., Kansas City, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR PLAINTIFF AND AGAINST DEFENDANT KEVIN K. KORAN IN THE SUM OF $19,675.00 AND OTHERWISE DENYING PLAINTIFF'S PRAYER FOR RELIEF AGAINST OTHER NAMED DEFENDANTS

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff, a creditor of the debtor entity holding a valid and perfected security interest in a portion of the accounts receivable of the debtor, seeks to recover the value of the diminution of the cash proceeds thereof from the principals of the debtor who are alleged to have used them without any authorization of the bankruptcy court as is contemplated by §§ 361–363 of the Bankruptcy Code.[1] The action came on before the bankruptcy court for hearing of its merits on November 26, 1985. The plaintiff then appeared by Michael R. Roser, Esquire, its counsel. Of the defendants, only the defendant Johannsen appeared formally, both personally and by counsel, David B. Sexton, Esquire. The defendants Cox and Kathleen D. Koran appeared only informally and without counsel and were satisfied not to participate actively in the trial of the action.[2] The defendant Kevin

---

1. "Section 552(b) of the Code operates to continue the claim of the secured creditor to proceeds generated postpetition from collateral such as accounts receivable.... Therefore ... the ... use ... of ... proceeds collected postpetition from prepetition receivables constituted use of 'cash collateral' without the requisite consent of the creditor bank or authorization of the court after notice and hearing." *In re Aerosmith Denton Corp.,* 36 B.R. 116, 119 (Bkrtcy.N.D.Tex. 1983).

2. They were explicitly admonished by the court at the inception of the trial and later in the course of the trial that, to permit the trial to go

K. Koran, although properly summoned and notified of the trial,[3] did not appear at all, but rather defaulted. The evidence which was then adduced warrants the following findings of material fact.

### Findings of Fact

■ The debtor organization filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 29, 1985, in the United States Bankruptcy Court for the District of Kansas. At the time of filing, the defendant Kevin Koran was the chief executive and managing officer of the debtor organization. He, along with his wife, the defendant Kathleen Koran and the defendants Cox, were all the stockholders, directors, and officers of the debtor entity.[4] The great majority of the existing cash of the debtor which was in existence at the time of filing of the petition for relief was the cash collateral of accounts receivable in which the plaintiff had a valid and perfected security interest.[5] According to the information transmitted by Kevin Koran to Carston C. Johannsen, the debtor's chapter 11 attorney, there were other accounts receivable which were producing cash proceeds which were not subject to the security interest of the plaintiff

or to any other security interest.[6] With knowledge that the Bankruptcy Code contemplates no use of cash collateral unless and until leave of court has been sought and obtained, Mr. Johannsen, according to uncontradicted testimony rendered by him, sought to have the United States Bankruptcy Court for the District of Kansas set a hearing on the issue of use of cash collateral. The earliest hearing date which he could obtain from that court was May 6, 1985. In the meantime, Mr. Johannsen advised Mr. Koran that cash collateral could be used only for barest necessities for keeping the business running—utilities, payroll, and other miscellaneous necessary upkeep.[7] It was his intention—again, according to his uncontradicted testimony in the hearing of the merits of this action—that only the unsecured cash collateral be used for this purpose and that, when a hearing could be held on the issue of the use of plaintiff's cash collateral, it was his idea to widen the use of cash collateral by granting the plaintiff a postpetition security interest in yet other unsecured property. But, before the hearing could be held on the issue of use of cash collateral, the Kansas Bankruptcy Court transferred the proceedings to this court.[8] Promptly after

forward might result in a judgment against them, even though they were not represented by counsel. They accordingly stated, in response to the court's admonitions, that they were content to permit the trial to go forward.

3. These facts purport to be shown by the clear records of the court. Summons was issued on June 27, 1985, under the terms of which an answer or other responsive pleading was due within 30 days of that date. Service of the summons upon the defendant Kevin Koran was certified by plaintiff's counsel on July 15, 1985. But no responsive pleading appears in the file. Further, the court records show that a copy of the order setting trial in this action was served upon the defendant Kevin Koran, but he did not appear for the trial, personally or by counsel.

4. The evidence without contradiction, however, shows that Kevin Koran was the presiding and controlling officer of the debtor corporation.

5. The fact of the validity and perfection of the plaintiff's security interest has never been questioned, either prior to the trial of the merits of this action or in the course of that trial.

6. According to the uncontroverted testimony of the defendant Johannsen, also, the unsecured accounts receivable and cash collateral therefrom existed in such numbers—according to the information given by Kevin Koran to him—that cash collateral could be used on an emergency basis without delving into the cash collateral of the plaintiff. Although the facts at trial showed that the cash collateral of plaintiff was in fact used without authorization, there is no evidence which contradicts Mr. Johannsen's statement to this effect.

7. The evidence shows that the cash collateral was used for other than necessary purposes. Again, however, there is no evidence which implicates Mr. Johannsen in its actual unauthorized use. According to his uncontradicted statements at trial, he did not counsel, direct or participate in the unauthorized use of cash collateral.

8. According to the files and records in this case, it was transferred to this court by written order entered on May 7, 1985.

transfer of the proceedings to this court, a trustee was appointed and the debtor's officers were ousted of possession.[9] The evidence adduced in the hearing of this action clearly shows that the cash collateral of the plaintiff had a level at the time of filing in the District of Kansas which had by the time of the appointment of a trustee by this court diminished by the sum of $19,-675.00.[9a] Mr. Johannsen states that he

**9.** A hearing was held on May 13, 1985, on the motion of Associates Financial Services Company of Texas, Inc., and, on the same date, Steven Block was appointed by this court as the trustee in bankruptcy after a hearing in which dissipation of assets was clearly demonstrated.

**9a.** According to the statement of affairs filed by the debtor on March 29, 1985, in connection with the filing of the petition in the District of Kansas, the inventory taken in February 1985, shortly before the filing of these proceedings, showed the inventory to be in the vicinity of $60,000. According to the reports of the trustee in bankruptcy who was appointed on May 13, 1985, see note 9, *supra,* the level of cash and inventory was radically smaller on the date of his appointment.

**10.** There is no evidence of the activities of the defendant Kathleen Koran and the defendants Cox in their capacities as officers and directors of the debtor corporation in respect of the particular fund of money and chattels which is the particular subject matter of the action at bar. Admittedly, this conclusion is based on evidence other than that which is contained in the depositions which were offered by the plaintiff and which were purported to have been taken of Kevin Koran previously. But these depositions were not demonstrated in the course of the hearing of this action to be admissible in evidence. Rule 30(e) of the Federal Rules of Civil Procedure, made applicable in bankruptcy cases by Rule 7030 of the Rules of Bankruptcy Procedure, requires, with respect to a deposition, that:
"When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. *If the deposition is not signed by the witness within 30 days of its submission to him, the officer shall sign it and state on the record the fact of the waiver* or of the illness or absence of the

first learned of this unauthorized use of cash collateral in the course of the hearing held by this court on May 10, 1985, on the issue of whether a trustee should be appointed. Throughout the time periods in question, the defendant Kevin Koran was in active control of the affairs of the debtor entity; the defendant Kathleen Koran and the defendants Cox had no active control.[10]

witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part." (Emphasis added.)
The depositions of Kevin Koran which were offered to the court in this action did not contain his signature. Further, the certificate of the reporter demonstrated on its face that the deposition had not been under submission to Kevin Koran for anything approaching 30 days when the reporter's certificate was made. Counsel for the plaintiff requested that the court set on adjourned hearing so that he might either, in the meantime, obtain Kevin Koran's signature on the depositions or else his waiver. But, at counsel's request, the hearing was not held. Therefore, this court concludes that the depositions may not "be used as fully as though signed," within the meaning of the foregoing rule. In a brief filed in lieu of the hearing, the plaintiff recites factual circumstances which it seems to contend amount to a showing of inability to find Kevin Koran. But this narrative cannot be admitted as evidence when the hearing has been waived by plaintiff. Plaintiff also complains that a motion to suppress the deposition, as contemplated by the above-quoted rule, was not filed by the defendants. But the motion to suppress is, according to the literal terms of the rule, applicable only when there has been a *refusal* to sign and reasons given therefor. In this action, the evidence properly before the court can support the conclusion only that Mr. Koran was given no *opportunity* to refuse to sign and state his reasons therefor. Rather, the court reporter who took down the deposition certified the transcript long before the 30-day period of submission to Mr. Koran had run out. The transcript thus shows on its face that the above rule was not complied with and that the deposition cannot be used in evidence. The authority cited and relied on by the plaintiff, *Bernstein v. Brenner,* 51 F.R.D. 9 (D.D.C.1970), is distinguishable because, in this action, as noted above, the plaintiff does not show by proper evidence any inability to have Mr. Koran accorded an opportunity to review and sign the deposition. If such a showing had been made

### Jurisdiction of the Bankruptcy Court

Several of the parties have at one time or another during the pretrial processing raised the issue of bankruptcy court jurisdiction. By the time of trial, all parties had formally and explicitly retracted any questions concerning jurisdiction which had previously been raised and had consented to bankruptcy court jurisdiction.[11] Nevertheless, it is the duty of the bankruptcy court, under the provisions of § 157(b)(3), Title 28, United States Code, to determine its jurisdiction on its own motion. The facts of this action, as found above, firmly place it within the ambit of bankruptcy court jurisdiction. Although a trustee's or debtor's cause of action for prebankruptcy conversion is not determinable by a bankruptcy court,[12] conversion of estate property committed after bankruptcy has always been considered to be within the summary jurisdiction of a bankruptcy court.[13] In this action, the collateral of the plaintiff in the possession of the debtor was in the bankruptcy estate by operation of § 541 of the Bankruptcy Code.[14] The prohibited use of cash collateral amounted to postbankruptcy conversion of estate property which has historically been remedied by exercise of the bankruptcy court's summary power of turnover.[15] Nor is it necessary, when estate property has been

by cognizable evidence, then the deposition might very well be admissible. See, e.g., *Ikerd v. Lapworth,* 435 F.2d 197, 206 (7th Cir.1970) ("The certificate of the reporter attached to Hardin's deposition contained a recital to the effect that the reporter had made numerous attempts to contact Hardin to have him read and sign the deposition, but that he avoided her and in effect refused to read or sign it.") But no such showing having been made by competent evidence, the court can only conclude that Koran had no fair opportunity to review the transcript and to sign it or refuse to do so and state reasons therefor or else waive signature. Thus, to admit the depositions in this action would be to violate the purpose of the above rule, which is "to preclude the selective use of deposition testimony." *Ikerd v. Lapworth,* supra, at 206. The danger sought to be reduced by the rule is that a fabricated transcription may be presented to the court instead of a faithful record of the deposition testimony—or at least one which may contain crucial errors. And, in this action, with respect to the Koran depositions, the rule has not been permitted to work so as to reduce this danger.

11. Both parties, on the record of the hearing, made statements to the effect that they consented to bankruptcy court jurisdiction. The current bankruptcy law may recognize such affirmatively-expressed consent as a basis for jurisdiction. See section 157(c)(2), Title 28, United States Code, to the effect that "(n)otwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title."

12. "There is hardly any question of law better settled than that (with certain exceptions before noted) a court of bankruptcy has no jurisdiction, without the consent of the adverse claimant, to hear and adjudicate in a summary proceeding a controversy as to title of or claims upon property held adversely to the bankrupt estate, where such property came into the claimant's possession prior to bankruptcy." 2 Collier on Bankruptcy para. 23.06, p. 494 (14th ed. 1976).

13. "(P)ossession obtained subsequent to bankruptcy does not make a party an adverse claimant." 2 Collier on Bankruptcy para. 23.06, p. 501 (14th ed. 1976).

14. "(U)nder the new Bankruptcy Code the debtor's estate can include property in which the debtor has *no* equity, i.e., property with encumbrances greater than the property's fair market value on the eve of the bankruptcy petition. Whether the bankruptcy court subsequently administers such property for the benefit of the estate or secured creditors is a secondary issue beyond the threshold question of this court's preliminary exclusive jurisdiction." *In re Brown,* 22 B.R. 844, 849, 850 (Bkrtcy.N.D.N.Y. 1982), affirmed, 39 B.R. 83, 85 (N.D.N.Y.1983) ("11 U.S.C. section 541(a)(1) provides that the estate of a bankrupt shall be comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.' As a general proposition, the debtor need not have equity in the property to have an 'interest.'"), affirmed, 734 F.2d 119 (2d Cir.1984).

15. See note 1, *supra.* "The threshold question ... is whether the court of bankruptcy has summary jurisdiction ... The rule which is applicable to the action now under consideration is the one which holds that a person who receives property of the bankrupt after the date of the filing of a petition in bankruptcy is subject to the summary jurisdiction of the bankruptcy court to issue an order sounding in turnover. '(A)ny person acquiring an interest in property of the bankrupt ... adverse to the creditors,

taken, for the plaintiff to demonstrate that the specific chattels remain in the possession of the converter. *See, e.g. South Falls Corp. v. Rochelle*, 329 F.2d 611, 619 (5th Cir.1964), to the following effect:

> "Had not the Bankrupt's dollar been transferred, South Falls would have parted with one of its own. That dollar would have come from its own cash or by liquidation of its ample assets. In effect, it now has a dollar, either in cash or property, which it would not have had but for the transfer of bankrupt funds. Of course, where the misappropriation is that of money, equitable concepts analogous to 'tracing' do not require identification of precise dollars as they go through various commercial mutations. The result is that Maggio now turns against South Falls. Turnover relief is proper, that case held, where '* * * existing chattels or their proceeds' are available. 33 U.S. 56, 63. Here the 'proceeds' of the cash are the remaining assets saved by this misappropriation of bankruptcy funds."

See also *Matter of Citizens Loan and Savings Co.*, 5 B.R. 510 (Bkrtcy.W.D.Mo.1979), affirmed, Civil Action No. 80–6017–CV–SJ (W.D.Mo. Feb. 27, 1981). On the basis of these well-established legal principles, the court concludes that it has jurisdiction to render judgment in this matter.

### Standing of Plaintiff

■ The defendant Johannsen, at the inception of the trial of this action, raised the issue of the plaintiff's standing to sue in this court, pointing out that plaintiff is not currently a corporation which is registered to do business in Missouri and that it therefore is not entitled to bring suit in any of the state or federal courts located in Missouri.[16] This doctrine, however, is not applicable, under notions of fair play and substantial justice, when plaintiff has been compelled to sue in the bankruptcy court where the debtor's bankruptcy proceedings are lodged.[17] This contention is therefore denied.

### Conclusions of Law

■ The prohibited use of cash collateral by a debtor entity amounts to a conversion of the secured creditor's property. It is well established that a secured creditor has a sufficient ownership interest in property so as to be a proper party to bring suit for its conversion. "[U]nder Missouri law the tort of conversion is completed by the mere sale of livestock [or other chattels] in which there is a security interest." *United States v. Gallatin Livestock Auction, Inc.*, 448 F.Supp. 616, 621 (W.D.Mo. 1978), *affirmed*, 589 F.2d 353 (8th Cir.

after the filing of a petition with notice of it, may be directed to surrender the property thus acquired by summary order of the bankruptcy court.' *May v. Henderson*, 268 U.S. 111, 117, 46 S.Ct. 456, 459, 69 L.Ed. 870 (1925). 'There can be no serious question about summary jurisdiction (in respect to) . . . a transfer of funds belonging to the bankruptcy estate after bankruptcy.' *South Falls Corporation v. Rochelle*, 329 F.2d 611, 616 (5th Cir.1964). And see also *In re Naviera Azta, S.A.*, 500 F.2d 390, 391 (5th Cir. 1974), to the effect that, '(g)enerally speaking, the bankruptcy court, either in the person of the referee or the district judge, may adjudicate summarily all rights and claims pertaining to property in the actual or constructive possession of the court.'" *Matter of Citizens Loan and Sav. Co.*, 5 B.R. 510, 512 (Bkrtcy.W.D.Mo.1979).

**16.** The contention to this effect has been raised only by the defendant Johannsen. His assertion is that the plaintiff has no standing to initiate this action because it did not procure a certificate of authority from the Missouri Secretary of State and also because it was not licensed under statutes regulating Missouri financing institutions, premium finance companies, and loan and investment companies. But the defendant has not demonstrated that the plaintiff did a sufficient quantum and type of business in Missouri so as to require such certification and licensing. See and compare *American Trailers, Inc. v. Curry*, 621 F.2d 918 (8th Cir.1980). Further, "[p]roof of acts constituting the doing of business within the state as to other customers without a license does not prevent the plaintiff from performing another perfectly valid transaction or series of transactions in interstate commerce which is not subject to state regulation and would not prevent the plaintiff from bringing an action as a result of said interstate transactions." *Newspaper Publishers, Inc. v. St. Charles Journal, Inc.*, 406 S.W.2d 801, 803 (Mo. App.1966).

**17.** And see note 16, *supra*.

1978). Further, the use of such collateral without lawful authorization, constitutes an unauthorized exercise of dominion over the property of another in accordance with one standard definition of conversion.[18] And, although fungible money is not ordinarily thought to constitute a chattel which can be the subject of conversion, that is not true when, as in the action at bar, the money represents a special fund as the traceable proceeds of the intangible chattels.[19]

Further, the law is clear that it is not only the entity which receives the benefit of a conversion which is liable in conversion, but all others who participated in the conversion are jointly and severally liable as well.[20] Under this doctrine, the liability of the debtor corporation and that of the defendant Kevin Koran for conversion is quite clear. The active control of all corporate matters which is demonstrated by the evidence is a sufficient predicate, under the circumstances of this case, for holding Kevin Koran responsible for the conversion of the plaintiff's cash collateral. "Every person is liable in trover who personally or by agent ... commits an act of conversion, or who participates in the conversion by instigating, aiding, or assisting another, or who knowingly benefits by its proceeds in whole or in part." 89 C.J.S. *Trover and Conversion* § 77, pp. 575–576 (1955). Under the same general rubric, the

debtor corporation is liable because of the benefit which it is shown clearly by the evidence to have gained as a result of the conversations. But the other defendants, including defendant Kathleen Koran, the defendants Cox, and the defendant Johannsen, are, under the same principles, not liable for the conversion. The evidence presented shows no active involvement by any of these defendants, nor does it trace any of the converted property or its proceeds into their hands. The sums which are shown to have been paid to the defendants Cox and Kathleen Koran are not shown to have been actively taken by them, but rather to have been extended to them by the controlling officer, Kevin Koran, either as payments on his account with them or that of the corporation. And it is not shown that the monies received by these defendants inevitably came from proceeds of the plaintiff's security.[21] The same cannot be said, under the circumstances, of the defendant Kevin Koran and the debtor corporation, who must necessarily have benefitted from conversion of the plaintiff's security.[22] The position of Mr. Johannsen as counsel for those who committed the conversions cannot, without more, constitute a sufficient basis for a judgment sounding in conversion. According to his uncontradicted testimony, he neither instigated, assisted, directed, advised, or participated in the conversion, nor did he

---

**18.** See, e.g., *Arnold v. Prange,* 541 S.W.2d 27, 30 (Mo.App.1976): "Conversion may be proved in one of three ways: (1) by tortious taking; (2) *by any use or appropriation to the use of the person in possession indicating a claim of right in opposition to the rights of the owner;* (3) by a refusal to give up possession to the owner on demand." (Emphasis added.)

**19.** "Money is the subject of conversion only when it can be described or identified as a specific chattel." *Breece v. Jett,* 556 S.W.2d 696, 710 (Mo.App.1977).

**20.** See *Matter of Transport Clearings-Midwest, Inc.,* 16 B.R. 890, 895, 896 (Bkrtcy.W.D.Mo. 1979), and cases and authorities there cited.

**21.** Once conversion of proceeds of security is initially established, it is, as observed *supra* in the text of this memorandum, unnecessary to

"require identification of precise dollars as they go through various commercial mutations." *South Falls Corp. v. Rochelle,* 329 F.2d 611, 619 (5th Cir.1964). But, in order to establish that it is the secured creditor's property which is initially converted, the secured creditor's security interest must be traced into the proceeds initially converted. *Matter of Mid-American Lines, Inc.,* 24 B.R. 52 (Bkrtcy.W.D.Mo.1982).

**22.** The evidence clearly shows that some $19,675.00 of plaintiff's security was misappropriated under Kevin Koran's direction. Plaintiff predicates the claim for conversion in this respect upon Koran's inevitable involvement in the disappearance of its collateral—and Mr. Koran has not appeared, although granted adequate notice and opportunity to be heard, to contradict either the showing that the collateral was diminished to the extent of $19,675.00 while it was subject to his possession and control.

benefit from it.[23] Rather, if his testimony is accepted, he did not advise that the debtor or any of its officers undertake the acts constituting the conversion nor in fact did he know anything of them until after the conversion had already been accomplished. And he did not in any way ratify the conversions by any of his actions subsequent to the conversion. Accordingly, this court holds that only Mr. Koran can be the subject of a judgment sounding in conversion.

Although the only evidence which has been adduced on the issue of which entity benefitted from the conversion tends to show that the debtor corporation solely benefitted therefrom, this court cannot enter any judgment against the debtor corporation. This is so, in the first instance, because the plaintiff does not request such a judgment.[24] And second, no attempt has been made to show that any conversion from which the debtor corporation benefitted was willful and malicious so as to be nondischargeable within the meaning of § 523(a)(6) of the Bankruptcy Code.

Therefore, the judgment can be issued solely against the defendant Kevin Koran on the basis that he actually converted the property which was given over to the benefit of the debtor corporation, according to the evidence which was adduced in this case. The governing state law requires this result, despite case decisions in bankruptcy dischargeability actions which hold that a converter has no liability unless he enjoys some "special benefit" from the conversion.[25]

Accordingly, for the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that the within complaint for relief be, and it is hereby, denied with respect to all defendants except the defendant Kevin Koran. It is further, accordingly,

■ ORDERED AND ADJUDGED that the plaintiff have and recover the sum of $19,675.00 of and from the defendant Kevin Koran with interest at the legal rate from the date of inception of the chapter 11 proceedings.[26]

---

**23.** Plaintiff predicates its contention that the defendant Johannsen's conduct was deliberate and knowing on his receipt of a letter of April 1, 1985, from the U.S. trustee advising that any use of cash collateral must be preceded by a grant of judicial permission and his attendance at a deposition of April 22, 1985, in which Kevin Koran testified to use of cash to make rental and other payments. None of the evidence adverted to by plaintiff, however, controverts Johannsen's testimonial contention that he believed that other, unsecured cash existed from which the payments were being made. This contention finds some support from the schedules which show possibilities of unsecured cash proceeds from the following sources: In the statement of affairs which was filed, it was mentioned that there was $60,000 of inventory and it is not stated whether it was subject to a security interest. It is further clear that the principal business of the debtor was creating accounts receivable and, according to the files and records in this case, it was not clear before mid-May 1985 that all of them would have been subject to security interests. Although the plaintiff insists that the defendant Johannsen knew or should have known that these receivables were all subject to existing security interests, it is not demonstrated that Mr. Johannsen did not truthfully testify in the hearing of this case that Kevin K. Koran told him to the contrary.

**24.** It is perhaps more correct to say that, although a judgment against the debtor is requested, no finding of nondischargeability is requested such as is necessary to make the judgment effective.

**25.** See *Matter of Whitlock,* 449 F.Supp. 1383 (W.D.Mo.1978). But cf. *Matter of Transport Clearings-Midwest, Inc.,* 16 B.R. 890, 893, 894, 895, 896 (Bkrtcy.W.D.Mo.1979). See also *In re Long,* 774 F.2d 875, 882, n. 10 (8th Cir.1985), appearing to adopt, in nondischargeability cases, the "special benefit" doctrine. Those decisions appear not to affect the liability of Kevin Koran, who is not a debtor in any bankruptcy proceeding.

**26.** The plaintiff additionally seeks an award of attorney's fees and costs, in addition to actual damages, as an award sounding in compensatory contempt for the defendant's allegedly contumacious violation of the automatic stay. See, e.g., *In re Brooks,* 12 B.R. 283 (Bkrtcy.W.D.Mo. 1981). But the evidence which is properly before the court does not warrant such an award. It crucially does not show that the defendant Kevin Koran knew or should have known that there was no excess of cash collateral, or potential cash collateral, over and above that which was secured to use for operating capital. See note 23, *supra.* His liability for conversion is not predicated on his lack of knowledge to this

effect, but on his actual disposition of the collateral of the plaintiff. Thus, there is not any actual wilful or malicious conduct demonstrat-

ed by the evidence so as to warrant a finding of contempt and compensation or punishment for contumacious conduct.