Timothy R. Whelan, Copeland, Scott & Whelan, Joplin, Mo., for plaintiff.

Thomas L. Williams, Roberts, Fleischaker & Scott, Joplin, Mo., for defendant.

**In the Matter of Dana Alan ROBISON, Debtor.**

**VICTOR FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Dana Alan ROBISON, Defendant.**

**Bankruptcy No. 85–03067–SW–11. Adv. No. 88–0029–SW–11.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

March 23, 1988.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE DECLARING DEFENDANT'S INDEBTEDNESS TO PLAINTIFF TO BE NONDISCHARGEABLE IN BANKRUPTCY IN THE SUM OF $6,000 AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SAME SUM FROM DEFENDANT

DENNIS J. STEWART, Chief Judge.

The plaintiff herein sues for a decree of nondischargeability with respect to the de-

fendant's disposition of certain personal property in which the plaintiff had a valid and perfected security interest. It is alleged that the defendant's disposition of the property was without the consent of the plaintiff and was, in addition, a wilful and malicious conversion within the meaning of § 523(a)(6) of the Bankruptcy Code.

The hearing of the merits of the joined issues was held on March 11, 1988, in Joplin, Missouri, whereupon the plaintiff appeared by counsel, Timothy R. Whelan, Esquire, and the defendant appeared personally, and by counsel, Thomas L. Williams, Esquire. The evidence which was then adduced showed as a matter of admitted fact that the defendant converted a 1978 International F966 tractor and used the proceeds thereof to make certain payments and to purchase certain materials to keep his business going.[1] His defense to the conversion claim is that he had the permission of an officer of the plaintiff corporation to sell the tractor and to substitute a motorcycle and a motor home as collateral. The credible evidence in this case, however, clearly shows this contention not to be true in any particular.[2] It shows further that the plaintiff was not even notified of the sale and that no replacement collateral was pledged or offered to be pledged by the debtor. Without permission of the plaintiff, the defendant applied the $6,000 proceeds of the sale for his own purposes.

## Conclusions of Law

Section 523(a)(6) of the Bankruptcy Code provides that a liability created by a willful and malicious injury to the property of another, including conversion of that property, is not dischargeable in bankruptcy. In order to be entitled to a decree of nondischargeability under this section, plaintiff must show both (1) that the defendant is guilty of a conversion and (2) that the conversion was accomplished willfully and maliciously.

In determining whether a conversion has been committed, the standard is whether the defendant has clearly exercised dominion over the chattel in a manner which is contrary to the plaintiff's claim of ownership or right to possession. "Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's right." *Houston v. Columbia Fed. Sav. & Loan Assn.*, 569 S.W.2d 211, 214 (Mo.App.1978). "The law of conversion is concerned with possession, not title, and its essence is not in the acquisition of the property by the wrongdoer, but in the wrongful deprivation of it to the owner. There need only be some repudiation of the owner's right or some exercise of dominion over it inconsistent with some right." *Price v. Ford Motor Credit Co.*, 530 S.W. 2d 249, 255 (Mo.App.1975). "Proof of conversion can be shown either by: (1) a tortious taking, or (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the owner on demand." *Houston v. Columbia Fed. Sav. & Loan, Assn., supra,* at 214; *Arnold v. Prange,* 541 S.W.2d 27, 30 (Mo.App.1976). The authorities clearly hold that selling or

1. From the evidence which has been adduced to the court on this issue, it does not appear that the defendant in any way disputes the fact that he sold the implement and used the proceeds as his own; rather, his contention appears to be (1) that he offered replacement collateral to the plaintiff and (2) that he used the proceeds for necessary business and living expenses, which makes any conversion not wilful or malicious, and (3) that he had the plaintiff's consent to sell the property and use the proceeds as his own. The simple facts of the case show otherwise. See note 2, *infra.*

2. The testimony of the defendant to the effect that he had permission from an officer of the plaintiff to substitute collateral and to sell the implement in question and use the proceeds as his own was directly contradicted by the testimony of that officer, who denied that any of the conversations with the defendant had in fact taken place. This court, primarily on the basis of the appearance and demeanor of the respective witnesses, finds that the credible testimony was given by the plaintiff's officer. On this subject, "(t)he deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses." *In re Windle,* 653 F.2d 328, 331 (8th Cir.1981).

otherwise disposing of secured property without permission of the mortgagee constitutes a conversion. See, e.g. *Commercial Credit Corp. v. Joplin Automobile Auction Co.*, 430 S.W.2d 440, 444 (Mo.App. 1968); *United States v. Gallatin Livestock Auction, Inc.*, 448 F.Supp. 616 (W.D.Mo. 1978), affirmed, 589 F.2d 353 (8th Cir.1979); *United States v. Chappell Livestock Auction, Inc.*, 523 F.2d 840, 842 (8th Cir.1975).

In determining whether a particular defendant is liable for a conversion, the criterion is whether that defendant either participated in the conversion or benefitted from it. "Every person is liable in trover who personally or by agent ... commits an act of conversion or who participates in the conversion by instigating, aiding or assisting another, or who knowingly benefits from its proceeds in whole or part." 89 C.J.S. *Trover and Conversion* § 77, pp. 575, 576 (1955); *Darling & Co. v. Fry*, 24 S.W.2d 722, 724 (Mo.App.1930); *Coleman v. Pioneer Studebaker, Inc.*, 403 S.W.2d 948, 952 (Mo.App.1966); *Matter of Anderson*, 15 B.R. 346, 350 (Bkrtcy.W.D. Mo.1981). In this action, as found above, there is evidence that the defendant Dana Alan Robison participated in or enjoyed the benefits of the conversion. Accordingly, a judgment can be entered against him and there is accordingly therefore a basis for a decree of nondischargeability with respect to the defendant Dana Alan Robison.

"A claim founded on a mere technical conversion without conscious intent to violate the rights of another, and under mistake or misapprehension, is dischargeable." 3 Collier on Bankruptcy ¶ 523.16, p. 523–117 (15th ed.1986). In determining whether a conversion is willful and malicious within the meaning of section 523(a)(6), *supra,* a range of definitions has historically been employed. One definition of "willful and malicious" which is applied is the "legal malice" or "objective" definition. "[A] wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.... Thus, the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to

other's injury, is a willful and malicious injury within the exception." 1A Collier on Bankruptcy ¶ 17.17, pp. 1652, 1653, 1654 (14th ed. 1976). See also to the same effect 3 Collier on Bankruptcy ¶ 523.16, pp. 523–111, 523–112 (15th ed. 1986). At the other end of the spectrum is the "actual malice" or "subjective" standard. "[W]hen a defendant has disposed of collateral without permission but with some notion, however erroneous it would appear to be, that he has a right to dispose of it, there can be no finding of willful and malicious conversion." *Matter of Lewis,* 17 B.R. 46, 48 (Bkrtcy.W.D.Ark.1981). "There must be an 'intent to do harm.'" *Matter of Nelson,* 10 B.R. 691, 692 (Bkrtcy.N.D.Ill.1981). Between these antipodes the decisions shifted even under the pre–1979 Bankruptcy Act. "A claim or judgment based merely upon negligence does not necessarily constitute a willful and malicious injury within the exception, even if the negligence is alleged to be reckless and wanton. The opposite result will be reached, of course, where the alleged negligence is founded upon a willful and malicious act. The cases shade imperceptively from one group to another." 1A Collier on Bankruptcy ¶ 17.17, pp. 1656, 1658, 1659 (14th ed. 1976). When the Bankruptcy Reform act of 1978 came into effect on October 1, 1979, its explicit refusal to consider "reckless disregard" as a substitute for intention appeared to give early impetus to the subjective standard. The pioneer cases under the new Code focussed on a frankly "subjective" definition which refused to grant a decree of nondischargeability unless a definite "intent to harm" the secured creditor were shown. If there was any ambiguity in the governing security agreement or the surrounding circumstances from which it could be inferred that the debtor had no "intent to harm" the secured creditor, then an innocent subjective intention was required to be inferred. At length, some decisions rejected this standard and returned to the "legal malice" standard on the basis of a recognition that the "subjective" standards were in most imaginable cases impossible to meet. See, e.g. *United Bank of Southgate*

*v. Nelson,* 35 B.R. 766, 773 (N.D.Ill.1983) ("In more recent case law, dissatisfaction with the [subjective] standard has led to a marked tendency by the courts to follow the intentional and deliberate definition of willful, but to strain to avoid what they view as the harsh and unfair results of the 'intent to harm' definition of malice. In general these cases seek to circumvent the apparent Congressional intent to obviate the [objective] standard and to apply the implied or constructive malice standard to the malicious requirement."); *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1009, 1010 (4th Cir.1985) ("To require specific malice or some other strict standard of malice for nondischargeability of a debt under the Bankruptcy Code would undermine the purpose of that provision and place 'a nearly impossible burden' on a creditor who wishes to show that a debtor intended to do him harm ... To require such specific malice would restrict section 523(a)(6) to the small set of cases where the debtor was foolhardy enough to make some plainly malevolent utterance expressing his intent to injure his creditor ... Under the facts of this case, Vaughn acted toward St. Paul 'deliberately and intentionally in knowing disregard of the rights of another.' ").

In our circuit, the Court of Appeals has developed a cautious and fair middle-ground standard which tests whether the debtor's conduct was of a type which was, or should have been recognized to be, certain to cause harm to the secured creditor. "When transfers in breach of security agreements are in issue, we believe nondischargeability turns on whether the conduct is (1) headstrong and knowing ['willful'] and (2) targeted at the creditor ['malicious'], at least in the sense that the conduct is certain or almost certain to cause financial harm." *In re Long,* 774 F.2d 875, 881 (8th Cir.1985). Under this rule, a debtor is charged with knowledge of the natural consequences of his or her actions.

"While intentional harm may be very difficult to establish, the likelihood of harm in an objective sense may be considered in evaluating intent. Use of objective information to ascertain intent to cause harm is by no means unfamiliar." *In re Long, supra,* at 881, citing *Bogard v. Cook,* 586 F.2d 399, 412 (5th Cir.1978), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979), in which it is said: "we read the malicious intent prong ... to require proof that [a defendant] either actually intended to do harm to the plaintiff, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result." This court reads the *Long* decision, *supra,* to work a substantial alteration in the law whereby the former "subjective" standard is no longer followed and a more salutary rule is to be employed whereby the debtor is responsible for the natural effect of his or her actions. Now, under the currently applicable standard, the court is obliged to assess whether the debtor knew or should have known that the conversion would cause harm to the plaintiff. The facts of this case clearly meet the standards set down in *In re Long, supra.* The conduct of the debtor was targeted at the creditor in his careful selection of the creditor's collateral for use to pay obligations owed to other creditors and it was certain to cause harm when none of the proceeds of the sale ever reached—or were intended to reach—the creditor.[3] Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that defendant's indebtedness to plaintiff in the sum of $6,000 [4] be, and it is hereby, declared to be, nondischargeable in bankruptcy. It is further, accordingly,

ADJUDGED that plaintiff have and recover the sum of $6,000 from defendant.

---

3. See note 2, *supra.*

4. The sole proof of the value of the implement converted was offered in evidence by the plaintiff and was to the effect that the defendant sold the collateral for the sum of $6,000. The defendant admits that this was the amount for which he sold it.