In the Matter of David F. WHEELER, Debtor.

MERCURY MARINE ACCEPTANCE CORP., Appellee,

v.

David F. WHEELER, Appellant.

Bankruptcy Nos. 86–02303–3, 87–0397–CV–W–8. Adv. No. 86–0417–3.

United States District Court, W.D. Missouri, W.D.

Dec. 6, 1988.

Bruce E. Strauss, Shockley, Reid & Tyson, Kansas City, Mo., for appellee.

Stephen B. Strayer, Liberty, Mo., for appellant.

## MEMORANDUM OPINION AND ORDER

STEVENS, District Judge.

Appellant David F. Wheeler challenges the bankruptcy court's decision that he is personally liable to plaintiff Mercury Marine Acceptance Corporation (MMAC) for $14,574.00. The debt was technically that of Wheeler Marine, Inc. (Wheeler Marine), a corporation of which Wheeler previously served as president.[1] The bankruptcy court held that Wheeler willfully and maliciously converted property in which MMAC held a security interest and, therefore, the debt is nondischargeable in Wheeler's personal bankruptcy[2] under 11 U.S.C. § 523(a)(6). This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

The parties agree on the majority of the relevant facts. David Wheeler served as president of Wheeler Marine, Inc., until the company filed for bankruptcy in May 1986. Wheeler Marine was in the business of selling boats and other boating equipment. *Matter of Wheeler*, 73 B.R. 220, 221 (Bankr.W.D.Mo.1987). On June 11, 1985 Daniel and Kerry O'Dell bought a boat, trailer and motor[3] from Wheeler Marine.[4]

---

1. Wheeler Marine filed for bankruptcy in May 1986.
2. The record does not indicate when Wheeler filed for bankruptcy.

3. For simplicity, the court will refer to the purchase of all three items as "the boat."

4. The O'Dells bought the boat for $11,690.00 and

At the time of the purchase Daniel O'Dell worked for Dave Wheeler at Wheeler Marine. When the O'Dells bought the boat they executed a retail installment contract which provided for the sale of the contract "with recourse" to a financial institution. Wheeler Marine sold the contract to MMAC, which is now trying to recover the amount due. *Id.* at 221–22.

At the bankruptcy court hearing, O'Dell testified that he made two monthly payments to MMAC. (Transcript 1 at 14).[5] Shortly after O'Dell and his wife bought the boat from Wheeler Marine they began to experience marital difficulties and discussed selling the boat. Although the testimony conflicted somewhat, it is clear that either Daniel O'Dell approached Wheeler or Wheeler approached O'Dell about the possibility of O'Dell "getting out from under" the debt of the boat. O'Dell testified that Wheeler told him he had a buyer for the boat. When O'Dell mentioned his concern about the fact that he was still responsible to MMAC under the terms of the installment contract, Wheeler told O'Dell that he "would take care of it all." (Tr. 1 at 15) As a result, O'Dell believed that he would no longer have any liability to MMAC.

After O'Dell "sold"[6] the boat to Wheeler Marine, the company sold the boat to Michael Leap[7] for $16,130.15. Wheeler Marine remodeled the boat to Leap's specifications and, as a result, although Leap paid for the boat in August 1985, he did not accept delivery until mid-September 1985.

Leap testified that it was his understanding that he was purchasing a new boat. (Tr. 2 at 4). Wheeler testified, however, that he told Leap the boat had been previously owned. When David Wheeler signed the manufacturer's statement of ori-

gin, titling the boat to Leap, however, he "certifie[d] that the boat [was] new and ha[d] not been registered in this or any other state ... he also warrant[ed] the title of said boat at time of delivery, subject to the liens and encumbrances, if any, as set out below...." (Tr. 1 at 35, Plaintiff's Exhibit 9) The only lien mentioned on the manufacturer's statement of origin was a $13,000 lien in favor of Blue Springs Bank which Leap had obtained to finance the boat. The MMAC lien was not mentioned anywhere on the statement of origin, and Leap testified that he did not have notice of it until he received a letter from the state of Missouri to Mr. and Mrs. O'Dell indicating that sales tax was due on the boat. Tr. 2 at 9. Although Wheeler certified that the only lien against the boat was the one held by Blue Springs Bank, he testified that at the time he sold the boat to Leap, he knew that O'Dell had an outstanding debt on the boat (Tr. 1 at 28).

Wheeler deposited the proceeds from the Leap sale into Wheeler Marine's corporate bank account. As a result, Wheeler Marine was paid twice for the same boat: once from the O'Dell sale and again after the Leap purchase. Wheeler testified that after he sold the boat to Leap, he continued to make the O'Dells' payments to MMAC with checks drawn on Wheeler Marine's corporate account. Wheeler stopped making payments sometime before March 1986.

At some point after Wheeler stopped making payments, MMAC representative Steven Risko contacted Mrs. O'Dell, whom he believed still owned the boat, to inquire about the apparent default.[8] Mrs. O'Dell told Risko that she and her ex-husband had sold the boat back to Wheeler Marine. As a result, Risko contacted Dave Wheeler, who told him that he was trying to sell the

---

paid $710.00 for the trailer.

**5.** Two separate hearings were held in this case, one on January 6, 1987 (Transcript 1) and one on January 12, 1987 (Transcript 2) (Hereinafter Tr. 1 or Tr. 2).

**6.** Although both parties speak of a "sale," apparently no money was exchanged; Wheeler,

through Wheeler Marine, simply agreed to make O'Dell's payments.

**7.** The bankruptcy opinion refers to him as Michael Leaps. The transcript and the parties both refer to Leap, however, and therefore the court will infer that his name is Leap.

**8.** Risko reached Mrs. O'Dell but was unable to find Mr. O'Dell.

boat, but that financing had not been finalized (Tr. 2 at 17–18).[9] Although Wheeler testified that he had previously told Risko [10] about the sale to Leap,[11] Risko stated that he did not know that the boat had been sold.

The bankruptcy judge found that Wheeler had converted the boat and that in so doing he willfully and maliciously injured MMAC. On appeal, Wheeler argues that the bankruptcy judge erred in finding that Wheeler was personally liable for the debt since he did not gain any personal benefit from the conversion. Wheeler also argues that even if a conversion did occur, the bankruptcy court erred in finding that it resulted in a willful and malicious injury as defined in 11 U.S.C. § 523(a)(6) since he did not intend to harm Mercury Marine and, consequently, the debt should be dischargeable in bankruptcy.

Bankruptcy Rule 8013 provides that a district court reviewing the decision of a bankruptcy court shall not set aside findings of fact unless they are clearly erroneous. The district court must give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses and must review all conclusions of law *de novo.* *Matter of Newcomb,* 744 F.2d 621, 625 (8th Cir.1984). Having reviewed the transcripts, the decision of the bankruptcy judge and the parties' briefs, the court concludes that the bankruptcy judge did not err in finding that Wheeler converted the boat, causing willful and malicious injury to MMAC. As a result, the debt is nondischargeable in bankruptcy.

■ Under Missouri law "conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Benson v. Jim Maddox North-* *west Imports, Inc.,* 728 S.W.2d 668, 669 (Mo.App.1987) (quoting *Maples v. United Savings & Loan Association,* 686 S.W.2d 525, 527 (Mo.App.1985). *See also Matter of Anderson,* 15 B.R. 346 (Bankr.W.D.Mo. 1981) ("the law of Missouri is clear to the effect that it is conversion to keep property of another, or its proceeds, without paying for it or returning it on demand"). Conversion occurs when an individual sells property in which another party has a security interest. *United States v. Gallatin Livestock Auction, Inc.,* 448 F.Supp. 616, 621 (W.D.Mo.), *aff'd,* 589 F.2d 353 (8th Cir. 1978). *See also Matter of Robison,* 86 B.R. 182 (Bankr.W.D.Mo.1988) (individual was liable for conversion when he sold a car, without authorization, in which bank maintained a security interest); *Matter of Koran Enterprises, Inc.,* 61 B.R. 321, 326 (Bankr.W.D.Mo.1986) ("secured creditor has a sufficient ownership interest in property so as to be a proper party to bring suit for its conversion").

■ In deciding whether Wheeler is liable for conversion this court must determine whether he "either participated in the conversion or benefitted from it." *Robison,* 86 B.R. at 184. Indeed, "the law is clear that it is not only the entity which receives the benefit of a conversion which is liable in conversion, but all others *who participated in the conversion* are jointly and severally liable as well." *Koran Enterprises,* 61 B.R. at 327 (emphasis added). *See also Benson,* 728 S.W.2d at 669 ("active, knowing participation in conversion" can submit individual to liability); *Boyd v. Wimes,* 664 S.W.2d 596, 598 (Mo.App.1984) (corporate officer may be held personally liable for conversion when he "has actual or constructive knowledge of the actionable wrong and ... participates therein").

---

**9.** At approximately the same time Wheeler received a letter from Brent DuPree, MMAC's Collection and Repossession Manager. DuPree wrote the letter to confirm a phone conversation he had with Wheeler, notifying Wheeler that if the boat was not sold within thirty days, MMAC would place the boat for sale. Exhibit 5.

**10.** Wheeler said he spoke with a Steve Rizzo. Risko testified his name is often confused with "Rizzo."

**11.** The court gives little credit to Wheeler's testimony since it is difficult to believe that MMAC would have refrained from making a demand for payment once it learned that the boat had been sold. *See Robison,* 86 B.R. at 183 n. 2 (individual who testified that bank officer had approved substitution of collateral was not a credible witness when bank officer testified to the contrary).

Wheeler argues that he cannot be personally liable for conversion since the proceeds from the sale of the boat were deposited directly into Wheeler's corporate account and, therefore, he did not personally benefit from the sale. While this scenario may well be true, it ignores the fact that Wheeler *participated in* the conversion and is liable because of that participation.

Wheeler argues that because he was acting in his capacity as president of Wheeler Marine, the debts cannot be asserted in his personal bankruptcy. In making this argument Wheeler relies on *Matter of Whitlock*, 449 F.Supp. 1383 (W.D.Mo.1978). In *Whitlock* the court held that a bankrupt officer could not be held personally liable for debts of the corporation without a showing that the bankrupt officer obtained some benefit from the monies owed. *Whitlock* was premised on a section of the bankruptcy code which stated that fraud, embezzlement, misappropriation, or defalcation created a nondischargeable obligation to pay debts created by the illegal conduct.[12] Thus, the situation is slightly different from the present case, where the claim is based on willful and malicious conversion and not on misappropriation or defalcation theories. Even if this claim were identical to that raised in *Whitlock*, however, the court would not follow *Whitlock* in this situation because to do so would not only produce an unjust result, it would also apparently produce a result contrary to Missouri law.[13]

This court is not the first to reject *Whitlock*. In *Matter of Transport Clearings–Midwest, Inc.*, 16 B.R. 890 (Bankr.W.D.Mo. 1979), the bankruptcy court refused to apply *Whitlock* because it believed to do so would be "unconscionable." *Id.* at 894. The court noted that while there was no explicit proof of benefit to the bankrupt corporation, "monies belonging to plaintiff once were in the possession of the [bankrupt] defendant but no longer are." As a result, the court held that plaintiff was "entitled to a decree of nondischargeability for 'willful and malicious conversion' by the debtor...." *Id.* at 896.

The Eleventh Circuit reached a similar result in a case analogous to the present one. *See Ford Motor Credit Co. v. Owens*, 807 F.2d 1556 (11th Cir.1987). Owens was the president, director, and majority stockholder of a car dealership. In this capacity he executed a financing agreement with Ford Motor Credit Company (FMCC) which gave FMCC a security interest in all vehicles purchased by the car dealership, as well as in the proceeds of those vehicles. Owens also executed a personal guaranty of the dealership's payment and performance to FMCC. *Id.* at 1557. On the same day that the dealership filed for bankruptcy under Chapter 11,[14] FMCC learned, during a routine audit, that several automobiles subject to the FMCC security agreement had been sold but the proceeds had not been turned over to the financing company as required by the financing agreement. *Id.* During the bankruptcy hearing, Owens admitted that he sold the vehicles without giving the proceeds to FMCC.

The Eleventh Circuit affirmed the district court's holding that the car dealership had converted FMCC's property. The court found that "a personal debtor who, as an officer of a corporation, actively participates in the conversion of property which is subject to the security interest of a third party, is personally liable to said party and thus the debt is nondischargeable pursuant to section 523(a)(6)." *Id.* at 1559. The court then held that "Owens was not entitled to a discharge in his personal bankruptcy because of his actions as

---

**12.** At the time *Whitlock* was written 11 U.S.C. § 35(a) controlled. This section has been replaced by 11 U.S.C. § 523.

**13.** The court is unclear as to whether *Whitlock* was correctly decided since under Missouri law an individual who participates in a conversion can be held personally liable for the conversion. *See, supra,* at 203. In any event, the court

finds that a better result is reached when the corporate officer who participates in the conversion is held liable for his actions. *See, infra,* at 204–05.

**14.** Owens also filed for personal bankruptcy. The opinion is unclear as to exactly when this filing took place, however.

a majority stockholder and president of Dothan Lincoln–Mercury, whereby he failed to comply with the essential terms of the [financing agreement]." *Id.* The Eleventh Circuit specifically noted that Owens was personally liable for the injury to the financing company "because of his official capacity with Dothan Lincoln–Mercury, and his active participation in the conversion of the property subject to FMCC's security interest." *Id.* at 1559–60. *Accord In re Tarrant*, 84 B.R. 831, 833 (Bankr.M.D.Fla. 1988) (individuals who were responsible for day-to-day operation of corporation could be held personally liable for nondischargeable debts under section 523(a)(6)).

▉ Like Owens, Wheeler actively participated in the conversion of the financing company's property and, therefore, should be held personally liable for the conversion. Having found that Wheeler participated in the conversion of the boat from MMAC, the court must next determine whether this conversion caused "a willful and malicious injury" to the financing company, as defined in section 523(a)(6).[15]

The Eighth Circuit has held "that malice and willfulness are two different characteristics" under section 523(a)(6). *In re Long*, 774 F.2d 875, 880–81 (8th Cir.1985). *Accord Matter of McCune*, 85 B.R. 834 (W.D. Mo.1988). In *Long* the court held that nondischargeability under this section "turns on whether the conduct is (1) headstrong and knowing ('willful') and, (2) targeted at the creditor ('malicious'), at least in the sense that the conduct is certain or almost certain to cause financial harm." The court found that Long's conduct was willful because he knew that in diverting funds to a corporate account, rather than to a "collateral" account, he was breaching a contractual arrangement. *Id.* at 881. The court refused to find malice, however, noting that Long had testified that by diverting the funds he was attempting to help his business succeed financially. Had this plan worked, it would have benefitted

the creditor. In the present case, however, there is absolutely no evidence that Wheeler believed he was helping MMAC. Indeed, rather than admit he acted wrongly, Wheeler's testimony at the hearing consisted of a series of statements that directly contradicted his actions in his dealings with both Leap and MMAC.

In making this finding the court relies on its determination that Wheeler's testimony was not credible and was directly contradicted by the testimony of MMAC employees, Leap and the various exhibits.[16] The court's finding that Wheeler acted with malice is bolstered by the fact that Wheeler knew or should have known that MMAC would be harmed when the proceeds from the sale of the boat to Leap never reached the company. *See, e.g., Robison*, 86 B.R. at 185 (conduct is "certain to cause harm when none of the proceeds of the sale ever reached—or were intended to reach—the creditor"); *Transport Clearings–Midwest*, 16 B.R. at 896 (action is willful and malicious when "debtor knew or should have known that certain monies which it had on hand belonged to the plaintiff, but rather than return these monies, it used them" for some other purpose). Similarly, Wheeler should have recognized that the continual delay in telling MMAC that the O'Dells no longer owned the boat, and that it had been sold to Leap, would almost certainly cause financial harm. *See Matter of Conner*, 59 B.R. 594, 596 (Bankr.W.D.Mo.1986) (conduct is willful and malicious when debtor uses the property of another without authorization over a period of time, continually delaying plaintiff's enforcement of its rights). In the instant case Wheeler knew that he was violating the terms of the financing agreement and he could not help but have known, as a man who dealt often with security interests and financing agreements, that MMAC would be harmed when he deposited the proceeds from the Leap sale into Wheeler Marine's corporate ac-

---

15. The bankruptcy code provides that an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to property of another entity." 11 U.S.C. § 523(a)(6).

16. *See, supra,* at n. 11.

count, rather than using it to pay MMAC which held a security interest in the property. Accordingly, it is

ORDERED that the judgment of the bankruptcy court is affirmed and that Wheeler's debt is nondischargeable in bankruptcy.